Robert FEITLER, Plaintiff,

v.

MIDAS ASSOCIATES et al., Defendants.

No. 75–C–6.

United States District Court,
E. D. Wisconsin.

Aug. 5, 1976.

John S. Sammond, Thomas W. O'Brien, and Quinn W. Martin, Milwaukee, Wis., for plaintiff.

Marvin E. Klitsner, Robert A. Christensen, and Joseph P. Hildebrandt, Milwaukee, Wis., for defendants.

DECISION AND ORDER

REYNOLDS, Chief Judge.

This action, in which the plaintiff seeks statutory damages for the defendants' alleged violation of the Wisconsin Uniform Securities Law (Chapter 551, Laws of 1971), was originally commenced on or after December 9, 1974 in the Circuit Court of Milwaukee County, Wisconsin. On January 8, 1975, the action was removed to this court pursuant to 28 U.S.C. § 1441, it appearing that the diversity of citizenship between the parties and the amount in controversy were such as to vest this court with original jurisdiction under 28 U.S.C. § 1332.

On the basis of the pleadings, stipulated facts, and supporting affidavits, both the plaintiff and the defendants have moved for summary judgment.[1] For the reasons hereinafter stated, the Court has determined that the defendants' motion for summary judgment must be granted, and the plaintiff's motion for summary judgment denied.

I

From the record in this case, the following facts appear: The plaintiff, Robert Feitler, is a resident of the State of Wisconsin. The defendant, Midas Associates, is a limited partnership organized under the laws of the State of New York, and has its principal place of business at 595 Madison Avenue, New York, New York 10022. The defendants, Samuel M. Stayman, Alfred Rand, Robert L. Bachner and Walter H. Weil, are each New York residents and general partners of Midas Associates.

The plaintiff first learned of Midas Associates from his brother-in-law who was visiting Wisconsin. The plaintiff subsequently contacted defendant Stayman and arranged for a meeting in the New York offices of Midas Associates on March 7, 1972. At that

---

1. At oral argument, the plaintiff informed the court that a dispute existed between the parties as to the method to be used in computing damages in this case. This dispute had not previously been raised, nor has it been briefed by the parties. The plaintiff's motion might thus more accurately be characterized as a motion for partial summary judgment on the issue of liability. In contrast, the defendants' cross-motion is for complete summary judgment, since the question of damages is not reached if defendants prevail on liability. Having noted this technical distinction, the Court will hereafter simply refer to the pending motions as motions for summary judgment.

meeting, plaintiff discussed Midas Associates with defendant Stayman and other persons involved in Midas Associates. Although the plaintiff indicated at this meeting that he desired to purchase a limited partnership interest in Midas Associates, he was then uncertain as to the amount of the interest he wished to purchase and whether the purchase was to be made in his own name or that of his wife or some other family member. During the meeting, the plaintiff was given an unexecuted copy of a Midas Associates limited partnership agreement, which he took back to Wisconsin.

On March 24, 1972, plaintiff signed the partnership agreement before a notary public in Milwaukee County, Wisconsin; pursuant to the terms of that agreement, as completed, the plaintiff was to make a cash capital contribution of $250,000. On that same date, the plaintiff mailed the signed and notarized limited partnership agreement to defendant Stayman in New York. On March 28, 1972, defendant Bachner signed the limited partnership agreement in his capacity as a general partner of Midas Associates before a notary public in New York County, New York. On that same date, defendant Bachner mailed a letter to the plaintiff at his Wisconsin home address, advising him that the agreement had been executed and enclosing an exact copy thereof.

On March 30, 1972 and April 3, 1972, the plaintiff mailed defendant Stayman checks in payment of the limited partnership interest purchase price. Thereafter, in November of 1973, the plaintiff became unhappy with the performance of Midas Associates and asked to withdraw from the partnership. His partnership share was returned to him, less the net losses which had been incurred by the partnership as a result of adverse business operations in the interim.

In December of 1974, plaintiff filed this lawsuit, seeking to recover the amount lost by him on his investment, plus interest.

## II

A.  Plaintiff asserts that recovery is authorized by § 551.59(1), Wis.Stats. (1973), which in relevant part provides:

"Any person who * * * sells a security in violation of s. 551.21 * * * or any rule relating thereto * * * shall be liable to the person purchasing the security from him * * * for damages * * *."

Midas Associates did not register its partnership agreement with the Wisconsin Commissioner of Securities, or ever report its sale of a limited partnership interest to the plaintiff to the Wisconsin Department of Securities. Plaintiff asserts that the absence of registration or a report results in the defendants' liability under § 551.59(1). In its answer and motion for summary judgment, defendants assert that by its terms, Chapter 551, Wis.Stats., does not apply to the transaction here in question; that if it does, the transaction was exempt from any requirement of registration or reporting; and that if it was not, this civil action is barred by the statute of limitations embodied in § 551.59(5).

The Court has carefully considered each of these positions. It has determined that the Wisconsin Uniform Securities Law applies to the transaction in question and that that transaction was subject to the reporting requirement established by administrative regulations promulgated pursuant to that law. The Court has concluded, however, that the limited partnership agreement was exempt from any requirement of registration. As a consequence of this conclusion, as explained more fully herein, the Court finds that the defendants incurred no liability to the plaintiff under § 551.59(1), and accordingly does not reach the question of the applicability of the statute of limitations.

B.  The reach and scope of the Wisconsin Uniform Securities Law with respect to sales of securities is defined by § 551.66, Wis.Stats. (1973):

"(1) The provisions of this chapter concerning sales * * * apply when [a] a sale or [b] offer to sell is made in this state or when [c] an offer to purchase is made and accepted in this state * *."

"Sale" and "offer to sell" are defined in § 551.02(11):

"(a) 'Sale' * * * includes every sale, disposition or exchange, and every contract of sale of, or contract to sell, a security or interest in a security for value.

(b) * * * '[o]ffer to sell' includes every attempt or offer to sell or dispose of, or solicitation of an offer to purchase, a security or interest in a security for value * * *"

For the securities law to apply, however, it is also necessary for the sale or offer to sell to be "made in this state." When it is that an "offer to sell" is made in this state is defined in § 551.66(2):

" * * *

For the purpose of this section, an offer to sell * * * is made in this state, whether or not either party is then present in this state, when the offer originates from this state or is directed by the offeror to this state and received by the offeree in this state, but for the purpose of s. 551.21, an offer to sell which is not directed to or received by the offeree in this state is not made in this state."

On the basis of this record, the Court cannot conclude that an offer to sell either originated from this state, or was directed by an offeror to this state and received by the offeree in this state. The only thing sold in this case was a limited partnership interest. The only offer to sell which ever occurred was the offer which defendants extended to the plaintiff while the latter was in New York on March 7, 1972. That offer to sell was admittedly perhaps not an offer to sell in the traditional contract sense of the term, since the object of the offer was then uncertain as to amount and form. In contract law, an offer to sell matures into a bonding contract upon a bare acceptance. Here, a bare acceptance would have left the critical terms of amount and form uncertain. Be that as it may, there was an "offer to sell" in the statutory sense of the term, since § 551.02(11)(b) defines offer to sell as including a "solicitation of an offer to purchase." Such a solicitation occurred when the defendants gave the plaintiff an unexecuted copy of the partnership agreement, implicitly inviting him to return it completed as to form and amount—in effect, inviting him to make an offer of purchase. But this offer to sell, in the sense of a solicitation of an offer to purchase, originated in New York and was directed to and received by the plaintiff in that state.

Unlike an offer to sell, it does not appear that the statute defines when it is that a "sale" is "made in this state." While in determining whether a transaction is a "sale" within the scope of the statute, this Court should look to the statute itself and not to the common law, *Hardtke v. Love Tree Corporation*, 386 F.Supp. 1085, 1090 (E.D.Wis.1975), the Court believes that in the absence of a statutory definition of a "sale * * * made in this state," it is not precluded from interpreting that phrase in the light of common sense.

The defendants' assertion that a sale of the limited partnership interest took place in New York on March 7, 1972, is belied by the fact that both the amount and the form of the transaction were at that time uncertain. Certainty of form and amount did not exist until the plaintiff executed the limited partnership agreement on March 24, 1972. Arguably, the uncertain "offer to sell" extended on March 7, 1972, was accepted by the plaintiff's execution of a document supplying certainty to theretofore uncertain terms, and consequently a sale took place on March 28, 1972 in Wisconsin. The better view, however, would seem to be that the enforceable rights which are the hallmark of a sale did not occur until four days later—and then in New York—when defendant Bachner signed the agreement in his capacity as a

general partner of Midas Associates. On that date, mutually enforceable rights came into existence, and it can reasonably be said that a sale had occurred. The Court believes that the sale which then occurred must be said to have taken place in New York, and not in Wisconsin, and thus that no sale was ever "made in this state."

■ The absence of a "sale" or "offer to sell" "in this state" does not, however, require a finding that the provisions of Chapter 551 concerning sales and offers to sell are inapplicable to this case. The statute also provides that "[t]he provisions of this chapter concerning sales and offers to sell apply * * * when an offer to purchase is made and accepted in this state," § 551.66(1). The statute defines when it is that an offer to purchase is "made" and "accepted" in this state:

"(2) For the purpose of this section, an offer * * * to purchase is *made* in this state, whether or not either party is then present in this state, when the offer originates from this state * * *.

(3) For the purpose of this section, an offer to purchase * * * is *accepted* in this state when acceptance is communicated to the offeror in this state, and has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received by the offeror in this state." § 551.66, Wis.Stats. (1973) (emphasis added)

The statutory definition of when it is that an offer to purchase is made "in this state" focuses on the locus of certain actions, and this focus is without regard to the actual presence of either party in the state. By completing and executing the limited part-

nership agreement, and placing it in the mail addressed to the defendant Stayman in New York on March 24, 1972, the plaintiff made an offer to purchase, complete as to amount and form, which offer can be said to have originated "from this state." Cf. *Kreis v. Mates Investment Fund, Inc.*, 473 F.2d 1308, 1311 (8th Cir. 1973). And although for purposes of determining when and where the "sale" took place, the Court has relied upon the counter-execution of the limited partnership agreement by defendant Bachner in New York on March 28, 1972—upon Bachner's "acceptance", as it were, of the plaintiff's offer—§ 551.66(3) requires that a different standard be used for determining where and when an acceptance of the offer to purchase occurred for purposes of § 551.66(1). That standard requires that this Court look to see whether the acceptance of the offer to purchase was communicated to the purchase offeror in this state. Defendant Bachner's letter of March 28, 1972, informing the plaintiff that the agreement had been signed was an acceptance directed to and received by the plaintiff in this state, and in the stipulation of facts the parties agree that this letter was the first communication to the plaintiff of the agreement's execution. The Court accordingly holds that, in statutory terms, an offer of purchase was both made and accepted in this state, and therefore that the provisions of Chapter 551 governing sales and offers to sell apply to the transaction in question.[2]

One of the provisions of Chapter 551 concerning sales and offers to sell is the registration requirement contained in § 551.21(1):

"* * * It is unlawful for any person to offer or sell any security in this state unless it is registered under this chapter or the security or transaction is exempted under s. 551.22 or 551.23."

---

**2.** For purposes of clarity, it should be emphasized that an offer to purchase made and accepted in this state is not a "sale" or "offer to sell"; rather, it is a transaction to which the provisions of Chapter 551 governing sales and offers to sell apply. The Court will hereinafter use the term "sale" in discussing the scope and effect of certain laws upon the transaction in question, but in so doing, the Court is only using a shorthand expression for the concept that provisions governing sales also apply to offers of purchase made and accepted in this state.

The defendants maintain that registration of the Midas Associates limited partnership agreement was not required because the transaction in question was exempted from registration by § 551.23(11):

"(a) Any transaction pursuant to an offer directed by the offeror to not more than 10 persons in this state, excluding persons exempt under sub. (8) but including persons exempt under sub. (10), during any period of 12 consecutive months, whether or not the offeror or any of the offerees is then present in this state, if the offeror reasonably believes that all the persons in this state are purchasing for investment, and no commission or other remuneration is paid or given directly or indirectly for soliciting any person in this state other than those exempt by sub. (8).

(b) The commissioner may by rule or order, as to any security or transaction, or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in par. (a), and may require reports of sales under this exemption."

The parties agree that the only rule promulgated by the commissioner pursuant to the authority of subsection (b) which is relevant to the present case is Rule SEC 2.02(5):

"With respect to an offer or sale of a security exempted under sections 551.-23(10) or (11), Wis.Stats.:

(a) Any issuer or other person effecting sales of securities of any issuer shall file with the commissioner written reports of such sales on forms prescribed by him within 10 days after the aggregate amount of such sales in this state exceeds $100,000 or sales are effected to an aggregate of 30 persons in this state within a 3-year period. * * *"

As previously noted, the parties have stipulated that the sale of the limited partnership interest in question was never reported to the office of the Commissioner of Securities of the State of Wisconsin. The parties have also stipulated that no limited partnership interests were sold to, nor was the subject matter of admission to partnership ever discussed with any Wisconsin resident other than the plaintiff.

▰ The defendants' first line of defense appears to be an argument to the effect that the reporting requirement established by SEC 2.02(5)(a) applies only to sales made after the aggregate amount of sales has exceeded $100,000. In the instant situation, defendants would argue that the initial sale of a single limited partnership interest in the amount of $250,000 need not be reported, but that any subsequent sale— in whatever amount—would have to be reported. Such a reading of the statute is unacceptable.

When "the aggregate amount of such sales * * * exceeds $100,000," such sales must be reported in writing to the Commissioner within 10 days. The referent of "such" sales is obviously that of the introductory phrase, i. e., a sale of a security exempted under § 551.23(11). Since the sale of the partnership interest here involved was a transaction exempt under § 551.23(11), and since the amount of that sale was in excess of $100,000, SEC 2.02(5)(a) required that that sale be reported to the Commissioner.

The defendants' alternate line of defense assumes that a report of the sale of a single $250,000 limited partnership interest was required, but argues that the filing of a report was not a condition subsequent to the existence and validity of the transaction's exemption under § 551.23(11) from § 551.21(1)'s requirement of registration. An evaluation of this argument requires an interpretation of § 551.23(11)(b), which in relevant part provides that "[t]he commissioner may by rule * * * further condition this exemption * * * and may require reports of sales under this exemption." As we have seen, SEC 2.02(5)(a) requires the filing of a report of the sales of securities which need not be registered since the transaction in which they are sold is one falling within the requirements of

§ 551.23(11)(a), whenever the dollar amount of securities so sold exceeds $100,000. The difficult question presented is whether the reporting requirement contained in SEC 2.02(5)(a) is a § 551.23(11)(b) "condition" of § 551.23(11)(a), or whether SEC 2.02(5)(a) is merely an exercise of the Commissioner's § 551.23(11)(b) authority to require "reports of sales *under* this exemption [§ 551.-23(11)(a)]," (emphasis added). The significance of the distinction is that under the former analysis, a failure to file the required report could be deemed a failure to meet the conditions of § 551.23(11)(a), thus making the sale of the security non-exempt thereunder and consequently subject to the registration requirement of § 551.21(1). Under the latter analysis, a failure to file the required report would constitute a violation of SEC 2.02(5)(a), but that violation alone would not endanger the transaction's status as one exempted from the registration requirement of § 551.21(1) by operation of § 551.23(11)(a). Upon due consideration of the arguments of counsel, the Court has concluded that the latter analysis comports more fully with the language of the statute.[3]

SEC 2.02(5)(a) requires a report of sales of securities when the amount of securities sold exceeds $100,000, when those securities are *"exempted under* [section] 551.23 * * (11)," (emphasis added). The exempted status of the securities is a *prerequisite* to the reporting requirement. If the failure to file the required report were to result in the loss of the exemption, the loss of the exemption would in turn destroy the requirement to report. The rule does not state that a security is exempt if and only if the report is filed; it states that the report must be filed if the security is exempt and sales thereof exceed $100,000.

§ 551.21 requires registration only if the security or transaction is not exempt. Exemption, in turn, is a condition precedent to the requirement to report. It is an inversion of this statutory and regulatory scheme to argue that the report is a condi-

---

**3.** At first glance, it would appear that the Court need not decide this difficult question, since the plaintiff's right to recover under § 551.59(1) is premised upon a sale "in violation of s. 551.21 * * * *or any rule relating thereto,*" (emphasis added). Plaintiff accordingly might well argue that (1) the sale in question was a sale in violation of SEC 2.02(5)(a), and (2) that SEC 2.02(5)(a) is a rule relating to § 551.21.

As previously determined, SEC 2.02(5)(a) required that the defendants report the sale in question, and consequently, that rule was violated when the defendants failed to file the required report. Defendants could argue that even if SEC 2.02(5)(a) was violated by their failure to file a report, it does not follow that the *sale* in question was one in violation of the rule.

Such a contention would be, however, but a sophistic exercise in logic. SEC 2.02(5)(a) requires that a report be filed after the amount of sales of stock within the transaction exemption of § 551.23(11)(a) exceeds $100,000. It is the sale which triggers the reporting requirement. To hold that the rule is violated by a failure to report, but that the sale which makes the report necessary is not in violation of the rule requiring the report would be to ignore that in the absence of such a sale, no report is required. The Court accordingly holds that the sale in question was a sale *in violation of* the rule.

The Court, however, cannot conclude that SEC 2.02(5)(a) is a rule relating to § 551.21. § 551.21 requires the registration of securities not exempt under the transaction exemptions of § 551.23. § 551.23(11)(a) exempts transactions "pursuant to an offer directed by the offeror to not more than 10 persons in this state." SEC 2.02(5)(a) requires that sales of securities "exempted under [section] 551.23 * * * 11" be reported when "the aggregate amount of such sales in this state exceeds $100,000." SEC 2.02(5)(a) is not a rule "relating to" § 551.21, which requires registration of certain securities, but rather a rule relating to transactions which § 551.23 exempts from § 551.21's registration requirement.

§ 551.59(1) speaks of sales in violation of "s. 551.21, 551.31 or 551.55 or any rule relating thereto." These sections deal with registration requirements, licensing requirements, and unlawful representations, respectively. It would have been a simple matter for the legislature to include within § 551.59(1) the phrase "rules relating to §§ 551.22 and 551.23," but this the legislature did not do. The Court concludes that SEC 2.02(5)(a) is a rule relating to an exemption under § 551.23(11)(a) and not a rule relating to § 551.21, and accordingly, that a sale in violation of SEC 2.02(5)(a) is not a sale "in violation of * * * [a] rule relating [to § 551.21]."

tion subsequent to the exemption, and that if the report is not filed, the exemption falls and the security must be registered.

In support of his position that a sale violative of SEC 2.02(5)(a) loses its exemption under § 551.23(11)(a), and thus violates § 551.21, the plaintiff refers the Court to a provision of the Illinois Securities Law of 1953, Ill.Rev.Stat. Ch. 121½, § 137.4, subd. G. An examination of that statute reveals that the statute itself explicitly conditions the exemption upon the subsequent filing of a report thereof:

"G. The sale or sales of securities other than fractional undivided interests in an oil, gas or other mineral lease, right or royalty, for the direct or indirect benefit of the insurer thereof or a controlling person, whether through a dealer (acting either as principal or agent) or otherwise, within any period of 12 consecutive months to not more than 25 persons in this State [is exempt] *if*:

*     *     *     *     *     *

(4) The issuer * * * shall file with the Secretary of State a report of sale not later than 30 days after the sale * * ." (emphasis added)

■ Effective September 1, 1972, the Wisconsin Commissioner of Securities adopted new regulations which effectively changed Wisconsin law so as to make it parallel to the provisions of the aforementioned Illinois statute:

"*SEC 2.02(6)(d)*

Any issuer or other person selling securities under these sections shall file with the commissioner a report of such sales on a form prescribed by him, within 30 days after the aggregate amount of such sales in this state exceeds $50,000 or sales are effected to an aggregate of 20 persons in this state within a 3-year period, setting forth the name and address of the issuer and each purchaser in this state, a description of the securities sold, the amount of securities and price paid by each purchaser and the date of each transaction. Each such person shall file with the commissioner supplemental re-

ports within 30 days after the end of each calendar quarter in which further sales of the securities are effected.
*SEC 2.02(6)(e)*

The exemption for any offer or sale under these sections is withdrawn with respect to: any offer or sale by or on behalf of any issuer or other person who has failed to file the most current report of sales specified in subsection (6)(d); * * * "

In promulgating SEC 2.02(6)(e), the Commissioner was exercising his § 551.23(11)(b) authority to "by rule or order, as to any security or transaction, or any type of security or transaction, *withdraw or further condition* this exemption [§ 551.23(11)(a)]," (emphasis added). In contrast, in promulgating SEC 2.02(5)(a), the rule governing this transaction, the Commissioner was only exercising his § 551.23(11)(b) authority to "require reports of sales *under* this exemption [§ 551.23(11)(a)]," (emphasis added). The "withdrawing or conditioning" of an exemption is distinct from the requiring of reports of "sales under an exemption," and the latter phrase clearly implies that the exemption itself is not effected by the reporting requirement.

Neither of the parties contend that SEC 2.02(6)(c) should be retroactively applied. Instead, the plaintiff argues that SEC 2.02(6)(e) merely clarifies the pre-existing effect of SEC 2.02(5)(a). In support of his contention that SEC 2.02(5)(a) operated as a condition subsequent to § 551.23(11)(a) at the time of the transaction in question, the plaintiff has filed certified copies of ten opinion letters from the Office of the Commissioner of Securities of Wisconsin, issued between April 15, 1970 and November 30, 1971. In these letters, the Commissioner takes interpretative positions with respect to certain transactions which are seemingly supportive of the plaintiff's position that the failure to file a report as required under SEC 2.02(5)(a) results in the revocation of the transaction exemption conferred by § 551.23(11).

To the extent that the Commissioner's interpretative position is supportive of the

plaintiff's position, the Court must conclude that it is contrary to and negated by the clear terms of § 551.23(11) and SEC 2.02(5)(a). In the Court's opinion, a violation of the reporting requirement contained in SEC 2.02(5)(a) does not result in the revocation of an exemption under § 551.23(11)(a). On the facts of this case, the Court accordingly must hold that although the defendants did violate the reporting requirements of SEC 2.02(5)(a), they did not violate the registration requirements of § 551.21.

In the absence of a sale in violation of § 551.21 or a rule "relating thereto,"[4] the defendants' failure to register the limited partnership agreement or to report the sale of an interest therein does not give the plaintiff a cause of action under § 551.59(1). Since the plaintiff has advanced no other basis in support of his claim, his claim must fail.

In light of this result, it is not necessary for the Court to pass on defendants' assertion that plaintiff's claim is barred by the statute of limitations set forth in § 551.59(5).

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be and it hereby is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment be and it hereby is granted.