STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. MATTES, Defendant-Appellant.†

Court of Appeals

*No. 92-1462-CR. Oral argument January 14, 1993.—Decided March 31, 1993.*

(Also reported in 499 N.W.2d 711.)

†Petition to review denied.

On behalf of the defendant-appellant, there were briefs and oral arguments by *Donna L. Hintze*, assistant state public defender.

On behalf of the plaintiff-respondent, there was a brief by *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general. There were oral arguments by *Jerome S. Schmidt*, assistant attorney general.

Before Brown, Anderson and Snyder, JJ.

SNYDER, J.   James R. Mattes appeals from a judgment convicting him of fraudulent practices in the sale of securities and from an order denying postconviction relief. Mattes contends that the trial court erred in finding  venue in Waukesha county and in improperly ordering restitution to witnesses who were not victims of the charged offense. Because venue was properly in Waukesha county, we affirm the conviction. We agree, however, that the portion of the judgment ordering restitution to the witnesses was improper and reverse and remand the restitution order.

Richard Sciacca entered into a business contract with Mattes based upon representations made by Mattes which were later determined to be fraudulent. Sciacca gave Mattes several checks during the period of July 5, 1988 to September 7, 1988. All of the checks were cashed by Mattes at the issuing bank in Waukesha county. Sciacca later demanded that Mattes return his investment but never received the money despite Mattes' agreement to return it. Mattes was charged with a violation of sec. 551.41(2), Stats., prohibiting fraudulent

transfers in the sale or purchase of securities, relating to his relationship with Sciacca.

## VENUE

■ Mattes contends that all of the requisite acts for securities fraud occurred in Milwaukee county and that venue in Waukesha county was improper. While venue is not an element of securities fraud, it nevertheless is a fact which must be proved beyond a reasonable doubt in order for a conviction to result. *Pickens v. State,* 96 Wis. 2d 549, 575, 292 N.W.2d 601, 614 (1980). Section 971.19, Stats., states in relevant part:

> **(1)** Criminal action shall be tried in the county where the crime was committed, except as otherwise provided.
> **(2)** Where 2 or more acts are requisite to the commission of any offense, the trial may be in any county in which any of such acts occurred.

Here, the issue of venue was included in the jury instructions and the jury verdict contained an implicit finding that venue had been established beyond a reasonable doubt in Waukesha county.

Mattes' venue argument turns upon the meaning of "sale" in sec. 551.41, Stats. Mattes was charged under sec. 551.41, which provides in part:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:
> . . ..
> **(2)** To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of

the circumstances under which they are made, not misleading . . ..

Mattes contends that the statutory definition of "sale" or "sell" supports his view that a sale is complete once a valid sales contract exists. Section 551.02(11)(a), Stats., defines "sale" or "sell" to include "every sale, disposition or exchange, and every contract of sale of, or contract to sell, a security or interest in a security for value." He further asserts that sec. 551.41(2), Stats., is almost identical to several federal statutes, and that the federal interpretation of "sale" provides guidance on how the term should be construed under sec. 551.41(2). Mattes argues that reliance upon the federal case law is valid for determining when a sale is complete for purposes of securities fraud in Wisconsin.

In support of his argument, Mattes relies upon *Feitler v. Midas Assocs.*, 418 F. Supp. 735 (E.D. Wis. 1976), which dealt with a contract between a Wisconsin resident and a New York limited partnership. Midas sent a limited partnership agreement to Feitler, who signed the agreement before a notary in Wisconsin. Midas' signatures were later added in New York. The *Feitler* court concluded that mutually enforceable rights came into existence on the date a Midas partner signed the agreement in New York and that it could be reasonably said then that a sale had occurred. *Id.* at 738-39. Mattes concludes that because the Midas sale occurred at the completion of that agreement in New York, this sale occurred in Milwaukee county where both he and Sciacca signed this agreement.

The state responds that the contract for sale of the securities in this case did not create mutually enforceable rights because the securities contract was fraudulently misrepresented by Mattes. The state also contends

that the trial court properly consulted a dictionary definition of "sale" in its decision. The trial court used the dictionary definitions "the transfer of ownership of and title to property from one person to another for a price" and an "opportunity of selling or being sold" for the term "sale." WEBSTER'S EIGHTH NEW COLLEGIATE DICTIONARY 1019 (1977). A common and approved meaning for a word that is not a technical term may be ascertained by reference to a recognized dictionary. *See* sec. 990.01(1), Stats.; *State v. Mauthe,* 123 Wis. 2d 288, 298, 366 N.W.2d 871, 876 (1985).

The interpretation of a statute is a question of law that this court independently decides without deference to the trial court's conclusion. *Nelson v. Union Nat'l Bank,* 111 Wis. 2d 313, 315, 330 N.W.2d 225, 226-27 (Ct. App. 1983). A statute should not be construed so as to work absurd or unreasonable results, nor can a statute be construed in derogation of common sense. *State v. Clausen,* 105 Wis. 2d 231, 245-46, 313 N.W.2d 819, 826 (1982).

While we owe no deference to the trial court in interpreting the statute, we conclude that the trial court properly defined the term "sale" as used in sec. 551.41, Stats. The trial court held that Mattes' reliance upon *Feitler* was misplaced and reasoned that a condition precedent to the sale of stock was the exchange of all monies by Sciacca to Mattes, and that a partial exchange of money did occur in Waukesha county. Because Sciacca testified with some certainty that on at least one occasion he gave Mattes a check in Waukesha county, the evidence was not purely speculative. Witness credibility is a function for the trier of fact and will not be overturned unless the evidence and inferences which tend to

support the verdict are incredible. *State v. Lunz*, 86 Wis. 2d 695, 705, 273 N.W.2d 767, 773 (1979). Because we conclude that a "sale" occurred when Mattes accepted and immediately negotiated Sciacca's check at a Waukesha county bank, we hold that a reasonable trier of fact could have found venue in Waukesha county beyond a reasonable doubt based upon the evidence.

## RESTITUTION

At trial, Gerald Lindbergh and Dave Pucci were called by the state as "other acts"[1] witnesses to testify to business dealings they had with Mattes in 1988. Lindbergh testified that he had been approached by Sciacca and Mattes to be the sales manager for the new business. Shortly thereafter, Lindbergh paid Mattes $5000 under a promissory note which Mattes never repaid. Pucci testified that Mattes misled him regarding a contract which resulted in Pucci being held liable for $24,000.

The presentence investigation restitution summary identified Sciacca, Lindbergh, and Pucci as victims of Mattes' criminal actions even though Sciacca was the only victim mentioned in the criminal pleadings and there were no read-ins. The trial court sentenced Mattes to five years in prison and ordered that he pay restitution of $25,000 to Sciacca, $5000 to Lindbergh, and $24,000 to Pucci, for a total of $54,000. Mattes objects to the Lindbergh and Pucci restitution order.

■

The primary issue here is the interpretation of the term "victim" in the restitution statutes. The present

---

[1] Lindbergh and Pucci were allowed to testify over the objection of Mattes as a result of the state filing a motion to allow "other acts" evidence under sec. 904.04(2), Stats.

restitution statute, applicable to crimes committed on or after September 1, 1988,[2] requires the trial court to "order the defendant to make full or partial restitution . . . to any victim of the crime" or, if the victim is deceased, to the victim's estate. Section 973.20(1), Stats. The predecessor statute to sec. 973.20 required "restitution designed to compensate the victim's pecuniary loss resulting from the crime to the extent possible." Section 973.09(1)(b), Stats. (1985-86). Mattes' dealings with Sciacca occurred before and after September 1, 1988, and while both statutes use the term "victim" in imposing a requirement for a restitution order, we conclude that Mattes' crime was not concluded until the final payment was made on September 7, 1988 and that sec. 973.20 applies.

Sentencing is left to the discretion of the trial court, and our review is limited to determining whether there was a misuse of discretion. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). Again, the issue is one of statutory construction. Generally, the plain meaning must be given to the statute where a statute is plain and unambiguous. The application of a statute to a particular set of facts presents a question of law, which we decide without deference to the trial court. *State v. Szarkowitz,* 157 Wis. 2d 740, 748, 460 N.W.2d 819, 822 (Ct. App. 1990).

In *Szarkowitz,* the defendant contended that the trial court erred in ordering restitution to persons not associated with the crime for which he was convicted, and the court dealt with how the term "victim" is interpreted for restitution purposes. This court held that "[t]he term 'any victim of the crime' [in sec. 973.20(1),

---

[2] *See* secs. 44-45, 1987 Wis. Act 398.

Stats.,] is ambiguous in that it could reasonably be interpreted narrowly so as to encompass only the crime of conviction, or more expansively to encompass the entire 'crime' before the court in sentencing proceedings, including read-ins." *Szarkowitz*, 157 Wis. 2d at 751, 460 N.W.2d at 823. The court noted that our restitution statute was modeled on a federal statute which has been interpreted by the United States Supreme Court to authorize an award of restitution only for the loss caused by the specific conduct that constitutes the basis for the offense of conviction. *See Hughey v. United States,* 495 U.S. 411, 420 (1990). The court further noted that Wisconsin, contrary to the federal procedure, allows read-in charges. A read-in charge is a procedure where a defendant does not plead to an additional charge and is not sentenced on that charge, but such admitted uncharged offense is considered in sentencing the defendant on the charged offense for, *inter alia*, additional restitution. *Szarkowitz*, 157 Wis. 2d at 753, 460 N.W.2d at 824.

The *Szarkowitz* court concluded that "the language 'any victim of the crime' in sec. 973.20(1), Stats., includes victims of any crimes to which the defendant admits as part of the read-in procedure as well as victims of the particular crime for which he is convicted." *Szarkowitz*, 157 Wis. 2d at 754, 460 N.W.2d at 824. The inclusion of read-ins in Wisconsin therefore broadens the scope of authorized restitution beyond the federal rule. We still, however, read *Szarkowitz* to hold that restitution to a party with no relationship on the record to the crime of conviction (here, the securities fraud against Sciacca) or to read-in crimes is improper.

In *Szarkowitz*, the restitution ordered payable to an unrelated claimant was also based upon a restitution

581

summary. The state argues that the restitution is proper because: (1) the restitution summary and the other acts testimony provided Mattes notice of the monetary claims of Lindbergh and Pucci; (2) the summary provided a basis for restitution to them; and (3) Mattes did not object to the restitution[3] at sentencing. We are not persuaded that such arguments allow Lindbergh and Pucci to fall within the class of victims that can be reimbursed under the crime charged or as read-ins. We do not agree with the state that *Szarkowitz* can be read as broadly as is necessary to allow restitution to state witnesses who may also have unrelated claims against a defendant.

Because neither of the two avenues described in *Szarkowitz* for ordering restitution to Lindbergh and Pucci is present, either as to their being victims of the charged crime or as to their claims being presented to the trial court as read-ins, we hold that restitution to them is not authorized. Accordingly, we reverse and remand the order for restitution and direct the trial court to limit the restitution order to Sciacca.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded.

---

[3] Mattes did object to the testimony of Lindbergh and Pucci at the sec. 904.04, Stats., motion hearing.