COURT OF APPEALS
DECISION
DATED AND FILED

February 25, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1578-CR**

Cir. Ct. No. **2019CM120**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TIMOTHY D. WRIGHT,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed*.

¶1 FITZPATRICK, P.J.[1] Timothy Wright appeals a judgment of conviction for two counts of disorderly conduct, contrary to WIS. STAT.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

§ 947.01(1),[2] which was entered by the Sauk County Circuit Court upon Wright's no contest pleas. Wright was ordered to pay restitution in the amount of $14,755 to his former employer. Wright contends that the restitution order was improper for the following reasons: (1) Wright's former employer was not a victim of his criminal conduct; (2) the expenses for which his former employer sought restitution are not special damages recoverable in a civil suit; and (3) the circuit court erred in determining the amount of restitution Wright is to pay. I affirm.

## BACKGROUND

¶2　Wright was charged with four counts of disorderly conduct stemming from four incidents that occurred between January 2019 and March 2019 while he was an employee of Bluegreen Vacations Corporation at its Christmas Mountain Village location.[3] The criminal complaint set forth the following pertinent allegations. A law enforcement officer was dispatched to Christmas Mountain where S,[4] Wright's supervisor, provided the officer with a written statement describing the following four incidents:[5]

> On January 15, 2019, [Wright] was given his annual review. [Wright] went nuts when his supervisor came in.

---

[2] WISCONSIN STAT. § 947.01(1) provides that a person is guilty of disorderly conduct if "in a public or private place, [the defendant] engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance."

[3] For ease of reading, I will refer to Christmas Mountain Village as "Christmas Mountain."

[4] Pursuant to WIS. STAT. RULE 809.86(4), I refer to each natural person victim by a letter of the alphabet rather than his or her name.

[5] Wright's conduct detailed in the complaint is offensive on many levels. However, details of the conduct are necessary at this point of this opinion for a complete understanding of the issues raised in this appeal.

> [Wright] told her to get the fuck out of here…. [Wright] threw the paper at his supervisor. [Wright] then said fuck you you're not my boss and [A] can go fuck herself, "I am not filling that fucking paper out."
>
> On January 25, 2019, [Wright] went off about [B]. [Wright] said that fucking Pol[]ack I want to choke him and I will tear his heart out.
>
> On February 19, 2019, [Wright] went off about [C]. [Wright] was [upset] about the lease not being finished yet. [Wright] said Fuck [A] and her fucking Nigger husband…. [Wright] said fuck all of those assholes down at Corporate. I will go down to Boca [Raton, Florida] and shoot them all. During this rant, I told [Wright] you can't say [those] type of things. [Wright] said I don't fucking care I can say anything because I am fucking pissed.
>
> On March 14, 2019, [D] and myself [met] with [E]. We started out at the upper shop. [Wright] said who is that fucker. [D] said shush quiet that guy is from corporate. [Wright] said I will kill them all from Corporate. [D] said you can't talk like that. [Wright] then said fuck it, "I WILL KILL THEM ALL!!" Later that day, [Wright] said that fucker from corporate is a joke and all of those [f]uckers from corporate need to be taken out.

It is undisputed that, other than A's husband, each person mentioned in that quote from the complaint was an employee of Bluegreen Vacations at the time of the incidents and at the time that Bluegreen Vacations hired armed guards for Christmas Mountain (more about that shortly). It is further undisputed that Bluegreen Vacations has its "corporate," or home, office in Boca Raton, Florida, and Wright was fired from his employment on March 22, 2019.

¶3    The complaint also alleged that A informed law enforcement that Wright "has an issue" with the fact that A is married to an individual who is African-American and that "Wright has made multiple comments relating to killing members of A's family due them being 'nigger' babies." A "was fearful for the safety of her family" and "stated that if Wright were fired, she would not feel safe coming to work."

3

¶4 Wright pleaded no contest to two counts of disorderly conduct, the remaining two counts were dismissed and read-in at sentencing, and he was placed on eighteen months' probation.[6] At a later date, a restitution hearing was held to determine the amount of restitution, if any, owed by Wright. Bluegreen Vacations sought $14,755 in restitution under WIS. STAT. § 973.20(5)(a) and (b) for costs it incurred hiring 24-hour armed guard services to provide protection at Christmas Mountain at and around the time Wright's employment was terminated and Wright was arrested.

¶5 At the restitution hearing, the general manager of Christmas Mountain, Bill Hanson, testified to the following in support of the Bluegreen Vacations restitution claim. Because of Wright's threats, Bluegreen Vacations hired Allied Universal to provide around-the-clock armed guard services from March 22, 2019 through March 31, 2019. Bluegreen Vacations paid Allied Universal $14,755 for 227 hours of armed guard services at a rate of $65 per hour. According to Hanson, hiring an armed guard is not common practice in the "industry." In addition, Hanson, who had "been in the business 25 years and worked at multiple sites and hotels within the industry," had never been employed at a facility with an armed guard presence.

¶6 Wright testified to the following at the restitution hearing. He has not worked since the termination of his employment and his arrest. At the time of the hearing, Wright's sole income was from social security in the amount of $960

---

[6] Wright confirmed with the circuit court at the plea hearing that restitution may be based in part on the counts read into the record. *See* WIS. STAT. § 973.20(1g)(a) and (b). Wright, through counsel, agreed at the plea hearing that the allegations in the complaint are a factual basis for Wright's pleas.

per month, and his reported monthly expenses were between $800 and $900. In addition, Wright alleged an excess of $10,000 in debt.

¶7 The circuit court determined that Bluegreen Vacations is entitled to an award of restitution in the amount of $14,755, and the court directed Wright to make payments in the amount of $100 per month. The circuit court stated in pertinent part:

> I am satisfied that given Mr. Wright's status as a -- as a former employee, that it was wholly reasonable for the employer under these circumstances, and Mr. Wright's increasingly threatening statements while he was an employee, that the corporation reasonably determined to increase security for that ten-day period when Mr. Wright's passions about getting fired and getting charged criminally would be at their height, at a time when the court believed that Mr. Wright, for the safety of the public, needed to not possess any firearms out of concern about what he might do. So their actions were reasonable.

> I'm satisfied that they have provided sufficient evidence to substantiate the amount of -- that they paid for the increased security for that ten-day period. I do find that that increased security was directly related to concerns about Mr. Wright's prior threats and concern about what he may do once he had been fired and charged criminally.

> And I'm mindful that Mr. Wright currently does not have the ability to pay, write out a check for $14,755. I do need to take into account his ability to pay, as well as I believe the statute allows me to set a payment plan.

¶8 An amended judgment of conviction was entered reflecting the restitution ordered by the circuit court and the circuit court's order that Wright pay at least $100 per month toward the restitution award beginning about sixty days after the restitution hearing.

**DISCUSSION**

¶9    Wright appeals and makes the following arguments in challenging the restitution award ordered by the circuit court: (1) Bluegreen Vacations is not entitled to restitution because it is not a victim of his criminal conduct; (2) restitution for expenses Bluegreen Vacations incurred for armed guard services is improper because those expense are not "special damages" that could be recovered in a civil action; and (3) the circuit court erred in determining the restitution amount.

¶10    I begin by setting forth the standard of review and principles governing restitution in criminal cases.

### I.  Standard of Review and Governing Principles.

¶11    In criminal cases, restitution is governed by WIS. STAT. § 973.20. *State v. Longmire*, 2004 WI App 90, ¶11, 272 Wis. 2d 759, 681 N.W.2d 534. "A primary purpose of restitution is to compensate the victim," and § 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." *Id.* (quoting *State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994)).

¶12    The circuit court has authority to order restitution for "all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." WIS. STAT. § 973.20(5)(a). This statutory subpart prohibits the court at sentencing from ordering the payment of "general damages," which are "amounts intended to generally compensate the victim for damages such as pain and suffering, anguish, or humiliation."

*Longmire*, 272 Wis. 2d 759, ¶14. However, the circuit court may order the payment of "special damages" which, in the context of restitution in a criminal case, means "[a]ny readily ascertainable pecuniary expenditure paid out because of the crime." *Id.* (alteration in the original) (quoted source omitted).

¶13 WISCONSIN STAT. § 973.20(1r) provides in pertinent part that "[w]hen imposing sentence … the [circuit] court … shall order the defendant to make full or partial restitution ... to any victim of a crime considered at sentencing ... unless the court finds substantial reason not to do so and states the reason on the record." When determining whether and how much restitution to order, the court must consider the following five factors:

> 1. The amount of loss suffered by any victim as a result of a crime considered at sentencing.
>
> 2. The financial resources of the defendant.
>
> 3. The present and future earning ability of the defendant.
>
> 4. The needs and earning ability of the defendant's dependents.
>
> 5. Any other factors which the court deems appropriate.

Sec. 973.20(13)(a).

¶14 The burden of proof regarding a restitution award lies with the victim. *See* WIS. STAT. § 973.20(14)(a). Whether an item included within a restitution order comes within the statutory limitations of what a court may order is a question of law that this court reviews de novo. *State v. Haase*, 2006 WI App 86, ¶5, 293 Wis. 2d 322, 716 N.W.2d 526; *Longmire*, 272 Wis. 2d 759, ¶12. However, the determination of the amount of restitution to be ordered is reviewed

under the erroneous exercise of discretion standard.  *Longmire*, 272 Wis. 2d 759, ¶16.

¶15     I now address Wright's arguments and begin with his contention that Bluegreen Vacations was not a "victim" of his criminal conduct.

### II.  Bluegreen Vacations Was a Victim For Purposes of Restitution.

¶16     Wisconsin's restitution statute requires the circuit court to order a criminal defendant to pay restitution "to any victim of a crime considered at sentencing" absent a substantial reason for not doing so.  WIS. STAT. § 973.20(1r). In *State v. Gribble*, 2001 WI App 227, 248 Wis. 2d 409, 636 N.W.2d 488, we explained that, for purposes of § 973.20, the term "'victim' in [] § 973.20(1r) is most reasonably interpreted using the definition in WIS. STAT. § 950.02(4)(a)." *Gribble*, 248 Wis. 2d 409, ¶71.  Section 950.02(4)(a) defines "[v]ictim" to include "[a] person against whom a crime has been committed."  *See* § 950.02(4)(a)1.; *see also State v. Mattes*, 175 Wis. 2d 572, 581, 499 N.W.2d 711 (Ct. App. 1993) (stating that the "victim" to whom § 973.20(1r) refers is the victim of the crime of conviction and any crimes to which the defendant admits as part of the read-in procedure).  The "person against whom the crime has been committed" has been interpreted to mean a victim against whom a crime was directed as opposed to a person or entity who indirectly incurred damages from the defendant's criminal conduct.  *See, e.g.*, *State v. Storlie*, 2002 WI App 163, ¶11, 256 Wis. 2d 500, 647 N.W.2d 926 (holding that police department was not entitled to restitution to replace stop sticks used to stop the vehicle driven by the defendant who was operating the vehicle while intoxicated and who failed to stop as directed by police).

¶17 I begin the analysis with three points. First, the State argues that Bluegreen Vacations can be a "victim" under WIS. STAT. § 973.20(1r) even though it is a corporation. *See* WIS. STAT. § 990.01(26) (defining a "[p]erson" as "includ[ing] all partnerships, associations and bodies politic or corporate"). Wright does not refute this argument in any material way in his reply. Accordingly, I take that issue as having been conceded. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App.1994) (stating a proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted). Second, Wright does not dispute the circuit court's determination that it was reasonable for Bluegreen Vacations to retain armed guards for ten days to protect its employees after Wright was fired. Third, Wright does not assert that the amount paid by Bluegreen Vacations for the armed guards was excessive.

¶18 Wright's only argument on this issue is that his criminal conduct was solely "targeted" at natural persons to whom, and about whom, he made the statements that were the subject of his criminal offenses as delineated in the criminal complaint. In other words, Wright asserts that his conduct and threats were not directed at Bluegreen Vacations and, as a result, the circuit court lacked authority under WIS. STAT § 973.20(5)(a) and (b) to order him to pay restitution to that business. The State argues that Bluegreen Vacations is also a victim of Wright's crime because Wright's conduct "was sufficiently directed at the corporation to 'provoke a disturbance' in the corporation's perspective." I agree with the State for the three reasons next discussed.

¶19 Wright's actions must be viewed in context. He was not simply yelling loudly at work about the result of a recent football game. Rather, in graphic and violent terms that escalated with each incident, Wright threatened to

9

kill or otherwise harm employees who worked at Christmas Mountain in Sauk County. As a result, Wright's crimes were also committed against Bluegreen Vacations because, as the employer and the owner of the premises, Bluegreen Vacations should be able to have its employees safe and not distracted or frightened by Wright's illegal conduct. The actions taken by Bluegreen Vacations to retain armed guards in order to mitigate the risk of Wright causing harm to its employees at Christmas Mountain in Sauk County is a direct consequence of Wright's criminal conduct. That alone is enough to determine that Bluegreen Vacations is also a victim of Wright's crimes for purposes of restitution.

¶20 Beyond that, Wright threatened to kill individual employees from the home office of Bluegreen Vacations. In making its ruling, the circuit court was not required to consider Wright's threats against the corporate office employees as potentially happening only in Florida. Indeed, as the circuit court recognized, and even Wright recognized at the time he made one of his statements that led to his convictions, a Bluegreen Vacations employee from the corporate office was at Christmas Mountain in Sauk County. To the extent Wright argues that Bluegreen Vacations was required to keep its corporate employees away from Christmas Mountain in Sauk County so as to keep it from being a victim of his conduct, I reject that argument. Bluegreen Vacations had every right to have its corporate office employees at Christmas Mountain in Sauk County when it thought best, and Bluegreen Vacations took reasonable actions to protect those employees while at Christmas Mountain after Wright's criminal conduct.

¶21 Finally, exactly who Wright might at any time consider a person from "corporate" is not obvious from his rants, and his definition of a "corporate" employee may change. Therefore, Bluegreen Vacations reasonably prevented all employees from harm by Wright by retaining the armed guards.

10

¶22    Accordingly, I conclude that Bluegreen Vacations is a victim of Wright's criminal conduct and is therefore entitled to restitution under WIS. STAT. § 973.20(1r).

### III.  Bluegreen Vacations' Expenses Are "Special Damages" Recoverable in a Civil Action.

¶23    WISCONSIN STAT. § 973.20(5)(a) authorizes the circuit court to "[p]ay all special damages, but not general damages, substantiated by evidence in the record, *which could be recovered in a civil action* against the defendant for his or her conduct in the commission of a crime considered at sentencing."  *Id.* (emphasis added).

¶24    Wright contends that Bluegreen Vacations' costs for armed security are not recoverable as restitution under WIS. STAT. § 973.20 because Bluegreen Vacations' costs for armed security would not be recoverable in a civil action.[7] The State responds that Bluegreen Vacations' costs for armed security could be recoverable as special damages in a common-law action for private nuisance by intentional conduct.  *See* WIS JI—CIVIL 1926.  There are probably other causes of action that Bluegreen Vacations could properly state in a civil suit against Wright, but this cause of action mentioned by the State suffices.

---

[7] Wright asserts that armed security at Christmas Mountain did not address any perceived threat to employees at Bluegreen Vacations' corporate office.  To the extent that Wright is claiming that Bluegreen Vacations' costs for armed security are not "special damages" because those costs were not expended to protect corporate office employees, I reject his argument as insufficiently developed.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).  I also conclude that his argument is without merit as already discussed.

11

¶25 A claim for intentional private nuisance requires proof of four elements. *See* WIS JI—CIVIL 1926. The first element is the existence of a private nuisance, which is the "interference with [the plaintiff's] interest in the private use and enjoyment of [the plaintiff's] land." *Id.* The State argues that this element is shown by Wright's threat to kill employees at Christmas Mountain and his statement that individuals from the corporate office need to be killed. The State asserts that, from these threats, "[i]t stands to reason that each employee threatened, and the corporation as a whole, would be less able to enjoy/use their workplace/property."

¶26 The second element is significant harm from the interference. *Id.* "'Significant harm' means harm involving more than a slight inconvenience or petty annoyance…. If ordinary persons living in the community would regard the … interference as substantially offensive, seriously annoying or intolerable, then the … interference is significant." *Id.* The State argues that this element is satisfied given the "overall recent trend of increased mass-shootings per year" and Wright's threats to kill Bluegreen Vacations' employees. The State asserts that, given the nature of Wright's threats, it is "not … possible that any of [Wright's] co-workers or supervisors could feel anything but substantially offended, seriously annoyed, and that his actions were intolerable," and the same is true for Bluegreen Vacations.

¶27 The third element is intent. That is to say, that the defendant intentionally caused the private nuisance. *Id.* The State argues that it "is absolutely clear" from the allegations in the complaint and the transcript from the restitution hearing that Wright intentionally made the statements underlying his offenses.

¶28 The fourth element is the unreasonableness on the part of the defendant in causing the private nuisance. *Id.* A defendant acts "unreasonabl[y]" if "the gravity of the harm outweighs the utility of the [defendant's] conduct" or "the harm caused by the conduct is serious and the cost of compensating for this and similar harm to others would still make it feasible for [the defendant] to continue the conduct." *Id.* The State argues that Wright's conduct can have no utility whatsoever given the criminal nature of that conduct, and that the "gravity of the harm" to other employees was "substantial."

¶29 I conclude that none of the reasons identified by Wright for why Bluegreen Vacations' costs for armed security could not be recovered in a civil action for intentional private nuisance are availing. Wright asserts that private nuisance is "traditionally used to adjudicate conflicts between private landowners." (quoting *Prah v. Maretti*, 108 Wis. 2d 223, 239, 321 N.W.2d 182 (1982)). That argument fails for at least two reasons. First, the remainder of the sentence quoted by Wright points out that the cause of action of private nuisance has "flexibility." *See id.* Second, Wright cites no authority that bars a private nuisance claim in these circumstances.

¶30 Finally, Wright argues that the State did not identify any evidence that he interfered with Bluegreen Vacations' interest in or enjoyment of its land. Wright asserts that, although his statements were "upsetting," there is no evidence that his statements interfered with any use of the land. I disagree. Wright does not dispute that, while employed by Christmas Mountain, he made multiple, graphic threats to kill employees of Bluegreen Vacations. One employee, A, reported that she was fearful for her family and for her own safety in coming to work. There can be no doubt that other employees were also frightened. Bluegreen Vacations took the unusual but reasonable step of hiring armed security to protect employees

13

and guests at Christmas Mountain in the event that Wright acted on his threats in order for that corporation to use its land as it saw fit.

¶31    For those reasons, I conclude that the costs for the armed guards could be recoverable as special damages through the cause of action of private nuisance through intentional conduct.

### IV.  The Restitution Order Was Not an Erroneous Exercise of the Court's Discretion.

¶32    Wright contends that the court erred by ordering him to pay restitution in the amount of $14,755 at the rate of $100 per month.

¶33    This court reviews the circuit court's determination of the amount of restitution for an erroneous exercise of discretion.  ***Longmire***, 272 Wis. 2d 759, ¶16.  A circuit court properly exercises its discretion when it logically interprets the facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion.  ***Id.***  Whether the circuit court applied the proper legal standard is a question of law reviewed de novo.  ***State v. Rash***, 2003 WI App 32, ¶5, 260 Wis. 2d 369, 659 N.W.2d 189 ("[W]hether a restitution order comports with the statute … is subject to our de novo review.").

¶34    Wright argues that the circuit court failed to apply the proper legal standard because the court failed to consider all of the factors identified in WIS. STAT. § 973.20(13)(a) in determining that restitution was appropriate in this case. More specifically, Wright asserts that the court failed to consider his "limited ability to pay" the restitution.  *See* § 973.20(13)(a)3.-4.

¶35    Relevant here, at the restitution hearing Wright testified that he has been unable to obtain employment since his employment with Bluegreen

14

Vacations was terminated in March 2019, that his sole source of income is a social security payment which provides him income of $960 per month, and that his monthly expenses are $800 to $900 per month. At the conclusion of the hearing, the circuit court stated: "I'm mindful that Mr. Wright currently does not have the ability to pay, write out a check for $14,755. I do need to take into account his ability to pay, as well as I believe the statute allows me to set a payment plan." As the State concedes, the court's finding on Wright's ability to pay was not robust. However, the quoted statement clearly demonstrates that the circuit court considered Wright's ability to pay, as required by WIS. STAT. § 973.20(13)(a). Accordingly, I reject Wright's assertion that the court did not consider each of the factors identified in § 973.20(13)(a).

¶36 To the extent that Wright is arguing that the amount of restitution ordered is improper given his limited ability to pay, I reject that argument as well. As stated, the amount of restitution ordered in any given case is a discretionary decision for the circuit court. *Longmire*, 272 Wis. 2d 759, ¶16. The circuit court acknowledged Wright's financial circumstances and inability to pay the entire restitution amount at once. However, the court determined that Wright has at least some money he can pay in recompense for a direct consequence of his criminal acts, and directed Wright to make monthly payments in the amount of $100 consistent with WIS. STAT. § 970.20(10)(a) starting about two months after the restitution hearing. This gave Wright time to adjust his budget and is consistent with Wright's monthly expenses being as much as $160 per month less than his social security payment. This court will uphold the court's decisions "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995). Wright does not present this court with a developed

15

argument explaining why, under these circumstances, no reasonable judge could have reached the same conclusion, and I conclude that a reasonable judge could and, in fact, did.

¶37     Finally, Wright argues that imposing the $100-per-month installment payment "contradicts" his need for rehabilitation. I disagree, and the circuit court obviously disagreed, too. The $100-per-month payments works toward the rehabilitation of Wright because it makes it more likely that he will now understand that his criminal conduct has real, adverse consequences for others, and he has to pay (in this case, literally) for that conduct. That makes it less likely that he will offend again and, in turn, it is more likely that he will be rehabilitated.

¶38     Accordingly, I reject Wright's challenge of the restitution amount.

## CONCLUSION

¶39     For the foregoing reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.