IN the INTEREST OF JOSHUA M.W., a person under the age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

JOSHUA M.W., Respondent-Appellant.†

Court of Appeals

*No. 93–1529–FT. Submitted on briefs August 31, 1993.—Decided September 14, 1993.*

(Also reported in 507 N.W.2d 141.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the brief of *Peter J. Morin* of Menomonie.

For the petitioner-respondent the cause was submitted on the brief of *Roy La Barton Gay* of Chippewa Falls.

Cane, P.J., LaRocque and Myse, JJ.[1]

MYSE, J.    Joshua W. challenges a dispositional order adjudicating him delinquent and placing him at Lincoln Hills School.[2] Joshua contends that his plea hearing was not conducted within the thirty-day time limit required by sec. 48.30(1), Stats., and that the

---

[1] This is a three-judge appeal pursuant to the chief judge's September 10, 1993, order.

[2] This is an expedited appeal under Rule 809.17, Stats.

juvenile family court commissioner, Robert Ferg, was without authority to conduct the plea hearing. Because we conclude that the plea hearing was conducted within a reasonable time after Joshua filed his request for substitution of judge and that the juvenile family court commissioner was empowered to conduct the plea hearing, we affirm the order.

This case arises as a result of a delinquency petition charging Joshua W. with three counts of operating a motor vehicle without the owner's consent, one count of theft, one count of armed burglary, one count of possession of drug paraphernalia, one count of criminal trespass and one count of criminal damage to property. The petition was filed on October 16, 1992, and a plea hearing was scheduled before Judge Roderick Cameron on November 9, 1992. At the plea hearing Joshua filed a request for substitution of judge, which the court accepted. A new judge from a different county, Frederick Henderson, was assigned to the case on November 16, 1992, and he promptly scheduled a plea hearing for December 1, 1992. A heavy snow storm on that date prevented the judge from traveling to the county of jurisdiction, so the court attempted to conduct a plea hearing by telephone. Because the telephone system was inoperable, the court's attempt was unsuccessful. The court instructed the assistant district attorney to have Joshua put his plea in writing and send it to the court. The court indicated its intention to set a fact-finding or dispositional hearing upon receipt of the written plea. The district attorney was concerned that the procedure the court adopted did not provide for the mandatory personal instruction regarding Joshua's rights. Therefore, without Judge Henderson's authorization, the assistant district attorney requested the juvenile family court commissioner to conduct the plea

hearing on December 1, 1992. The court commissioner, who had been authorized to conduct plea hearings in juvenile court by the chief judge's and Judge Cameron's order, conducted the plea hearing on that date. Joshua objected to the court commissioner's jurisdiction and interposed his objection that the plea hearing was not conducted within the thirty days required by statute. Subject to those objections, Joshua admitted the charges contained in the petition.

At the dispositional hearing, Judge Henderson determined that the December 1 plea hearing was a continuation of the November 9 plea hearing, which was commenced within the thirty-day time period, and concluded that the plea hearing was timely under sec. 48.30(1), Stats. The court also concluded that the court commissioner was authorized to conduct the plea hearing by virtue of the chief judge's and Judge Cameron's order. The court entered a dispositional order placing Joshua in the custody of the Department of Health and Social Services at Lincoln Hills School.

Joshua's calculation of the thirty days in which the court was required to conduct the plea hearing involves an interpretation of sec. 48.315(1)(c), Stats. The authority of the juvenile family court commissioner to accept a plea hearing is also a question of statutory interpretation. These issues present questions of law that we review independently of the trial court's determination. *Brandt v. LIRC*, 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991). The purpose of the rules of statutory construction is to give effect to the legislative intent. *State v. Pham*, 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). When determining legislative intent, this court first examines the language of the statute itself and will resort to extrinsic aids only if

the language is ambiguous. *P.A.K. v. State*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681–82 (1984).

Joshua asserts, and the state concedes, that under sec. 48.30(1), Stats., the court is required to hold a plea hearing within thirty days of the filing of the petition. Once the period established by statute has passed, the juvenile court is without competency to act and the petition must be dismissed. *See In re Shawn B.N.*, 173 Wis. 2d 343, 358, 497 N.W.2d 141, 146 (Ct. App. 1992). The time limit provided by sec. 48.30(1), however, is subject to sec. 48.315(1)(c), which provides:

> The following time periods shall be excluded in computing time requirements within this chapter:
>
> (c) *Any* period of delay caused by the disqualification of a judge. (Emphasis added.)

■

Joshua concedes that the time period from November 9, the date he requested a substitution of judge, until November 16, the date the substitute judge was assigned, is excluded from the computation of the thirty-day period under sec. 48.315(1)(c), Stats. However, Joshua argues that the time period from November 17 until December 1, the date of the plea hearing, is not excluded from that computation. According to Joshua, the plea hearing occurred thirty-nine days after the petition's filing. Under Joshua's analysis, because the request for substitution was filed on the twenty-fourth day after filing, the newly-assigned judge had but six days within which to exercise his jurisdiction following receipt of the court's assignment.

■

We conclude that Joshua's interpretation of the statute is inconsistent with the legislative purpose

behind the statute and the language the legislature chose to accomplish that purpose. First, sec. 48.315(1)(c), Stats., is a remedial statute designed to alleviate the substantial difficulties facing juvenile courts required to operate within statutorily specified time periods when the juvenile interrupts the proceedings by filing a request for substitution of judge, which necessitates assigning and rescheduling matters before another court. "[R]emedial statutes should be liberally construed to suppress the mischief and advance the remedy which the statute intended to afford." *City of Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976) (citation omitted). Additionally, the legislature expressed its intent that ch. 48 "shall be liberally construed." Section 48.01(2), Stats.

Joshua's interpretation would not only frustrate the remedy provided by the statute but would place in the hands of juveniles an effective tool for depriving juvenile courts of competency to act on petitions properly before them. For example, if the plea hearing in this case were scheduled on the thirtieth day after filing and Joshua's request for substitution were properly filed and accepted on that day, the newly-assigned judge would be required to conduct the plea hearing the day after the assignment, regardless of the date, day of the week or calendar of the newly-assigned judge. Failure to do so would deprive the court of competency to act. We also note that a judge assigned on a Friday afternoon would lose several calendar days before the court even has an opportunity to schedule the required hearing. These results are directly contrary to the purpose evinced by the statutory scheme. The legislature provided time limits to protect the interests and welfare of juveniles. However, the legislature's enactment

of sec. 48.315, Stats., demonstrates its recognition that those time limits could be abused by juveniles desiring to avoid prosecution by forcing a delay and its desire to prevent such abuse.

■

Moreover, Joshua's reading of the statute ignores the broad language the legislature chose to address this problem. Section 48.315(1)(c), Stats., does not limit the tolling of time requirements to the date of assignment but rather declares that "[a]ny period of delay caused by the disqualification" shall not be counted when computing time requirements. (Emphasis added.) The delay caused by disqualification is not limited to the time required to assign a new judge but includes those periods of time necessary to send out any statutorily required notices, notify the parties of the newly scheduled hearing date and to arrange for calendar time on the court's calendar. *Shawn B.N.*, 173 Wis. 2d at 358, 497 N.W.2d at 146. Section 48.315(1)(c) unambiguously encompasses these periods of time because they are directly caused by the disqualification of the judge. Interpreting sec. 48.315(1)(c) to exclude the time the assigned judge needs to schedule the hearing ignores the reality of full and often overloaded court calendars.

■

We therefore conclude that sec. 48.315(1)(c), Stats., provides that the time required to schedule the plea hearing before a substituted judge is excluded from the computation of the thirty-day time period, provided the delay is caused by the disqualification and is not unreasonable. The delay caused by the need to properly send out any statutorily mandated notices and to rearrange the calendars of the court, the parties and counsel to accommodate the required hearing is a

reality of the substitution process and will not deprive the court of competency to act, provided the delay is not unreasonable. The question of reasonableness will of necessity vary with the circumstances of each case. In this case, Judge Henderson scheduled a plea hearing within two weeks of the date of his assignment. The substitution required Judge Henderson to travel from Rusk County to Chippewa Falls, and also required the court to rearrange its calendar. Additionally, Judge Henderson was required to schedule the hearing far enough into the future so that any statutorily required notices could be sent to the parties. Based on these circumstances, we conclude that the delay in Joshua's plea hearing was caused by the disqualification of Judge Cameron and was reasonable.

However, our holding does not extend indefinitely the amount of time a court may delay such hearings without losing competency to act. Because the legislature has provided for thirty- and ten-day time periods within which plea hearings must be conducted, depending on whether the juvenile is in custody, we conclude that a delay by the newly-assigned judge exceeding thirty or ten days after the assignment is unreasonable as a matter of law, unless the court finds good cause for granting a continuance under sec. 48.315(2), Stats.

Next, Joshua contends that the court commissioner was without authority to conduct the plea hearing. Joshua concedes that the court commissioner was duly appointed and authorized by Judge Cameron and the chief judge of the tenth judicial district to conduct ch. 48, Stats., plea hearings. However, Joshua argues that sec. 48.065(2)(d), Stats., requires court commissioners to be "specifically authorized [by the

344

substituted judge] to hear this plea hearing." Section 48.065(2)(d) provides:

> Under this chapter a juvenile court commissioner, if authorized to do so by a judge, may:
>
> (d)   Conduct plea hearings.

■ The legislature recently amended sec. 48.065(2)(d), Stats., which used to empower court commissioners to conduct ch. 48 plea hearings upon authorization by "a judge assigned to exercise juvenile court jurisdiction." Section 48.065(2)(d), in its current form, only requires authorization by a judge. Joshua's argument that the judge specifically assigned this case must consent is neither found in the statute's language nor supported by other authority. Court Commissioner Ferg was authorized to conduct ch. 48 hearings by an order signed by Judge Cameron in Chippewa County and the chief judge of the administrative district. This is sufficient under sec. 48.065(2)(d) to empower the court commissioner to conduct ch. 48 plea hearings. We therefore conclude that court commissioner Ferg was authorized to conduct Joshua's plea hearing.

*By the Court.*—Order affirmed.