Robert W. COX and Clarence C. Swank, Petitioners-Appellants-Cross Respondents,†

Gladys SWANK, Petitioner,

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent-Respondent-Cross Appellant,

BEVERLY ENTERPRISES-WISCONSIN, INC., Intervenor-Respondent-Respondent. [Case No. 93–0336.]

Joseph WALTHER and Darryl Hoffman, Petitioners-Appellants-Cross Respondents,†

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent-Respondent-Cross Appellant,

BEVERLY ENTERPRISES-WISCONSIN, INC., Intervenor-Respondent-Respondent. [Case No. 93–0037.]

Court of Appeals

*Nos. 93–0336, 93–0337. Oral argument October 14, 1993.—Decided April 27, 1994.*

(Also reported in 517 N.W.2d 526.)

†Petition to review denied.
†Petition to review denied.

On behalf of the petitioners-appellants-cross respondents Robert W. Cox and Clarence C. Swank, the cause was submitted on the briefs and oral argument *Jeffery R. Myer* and *David P. Cohn* of Legal Action of Wisconsin, Inc., Milwaukee. *Jeffrey R. Myer* appeared and argued at oral argument.

On behalf of the petitioners-appellants-cross respondents Joseph Walther and Darryl Hoffman, the cause was submitted on the briefs of *Roy Froemming* of the Wisconsin Coalition for Advocacy, Inc., Madison.

On behalf of the respondent-respondent-cross appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general and *F. Thomas Creeron III*, assistant attorney general.

On behalf of the intervenor-respondent-respondent, the cause was submitted on the brief and oral argument of *Maureen A. Molony* and *Katherine L. Williams, Beck, Chaet, Loomis, Molony & Bamberger, S.C.*

of Madison. *Maureen A. Molony* appeared and argued at oral argument.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.   Robert W. Cox, Clarence C. Swank, Joseph Walther and Darryl Hoffman (collectively Cox) appeal from the decision of the trial court dismissing their petition for judicial review. The trial court determined that Cox did not have standing to seek judicial review of the decision of the Wisconsin Department of Health and Social Services transferring a license for an eighty-bed nursing home from Kenosha County to Milwaukee County. DHSS cross-appeals from the decision of the trial court that ch. 150, subch. II, STATS., permits parties other than health care providers to seek judicial review of DHSS decisions on allocation of resources for long-term care.

We conclude that ch. 150, subch. II, STATS., is a comprehensive and exclusive scheme governing DHSS determinations granting or denying applications for nursing home beds and beds in facilities primarily serving the developmentally disabled. The inclusive and restrictive provisions of the chapter limit judicial review to applicants for available beds whose proposed project is rejected by DHSS after a public hearing. Because we conclude that Cox is precluded from petitioning for judicial review, we do not have to consider whether or not parties eligible for state funding of community-based care have standing to challenge a decision of DHSS allocating scarce Medicaid resources between nursing homes and community care programs. Although we conclude that the trial court erred in denying DHSS's motion to dismiss, the practical effect of our decision is to affirm the judgment and

order of the trial court dismissing Cox's petition for judicial review.

The named petitioners-appellants in these consolidated appeals are all residents of Kenosha County and have been determined to be eligible for long-term support services under the Community Options Program (COP), Community Options Program Medical Assistance Waiver, and the Community Integration Program (CIP-II), operated under §§ 46.27 and 46.277, STATS. Cox commenced this action after DHSS approved the 1992 application of Beverly Enterprises-Wisconsin, Inc. to build a 100-bed nursing home facility in Greenfield, Wisconsin. Part of the approval permitted the transfer to the new facility of the license for an eighty-bed nursing home in Kenosha that Beverly Enterprises acquired in 1990 when it purchased the stock of the corporation that operated the Kenosha facility.

The petitions for judicial review represent that DHSS approval deprived Kenosha County of approximately $700,000 in funding to provide appropriate long-term service alternatives to nursing home care provided under the Community Options Program, Community Options Program Medical Assistance Waiver and the Community Integration Program. According to the petitions, after the eighty-bed Kenosha nursing home closed, DHSS informed Kenosha County that the beds would be converted into funds to provide alternative care to county residents who had been declared eligible for community-based treatment. The petitions represent that Kenosha County is a priority county and is eligible for redistribution, under DHSS rules, of nursing home beds that become available due to facility closure. The petitions conclude that the approval of the transfer of the license deprived the

314

county of the anticipated revenue and prevented the county from providing alternative long-term care to the named petitioners who were on waiting lists for community services.

In response, DHSS filed a motion to dismiss on the grounds that the comprehensive administrative review procedures in ch. 150, subch. II, STATS., precluded the named parties from seeking judicial review under §§ 227.52 and 227.53, STATS. Beverly Enterprises, which had been granted permission to intervene, filed a motion to dismiss on the grounds that Cox lacked standing. The circuit court granted Beverly Enterprises' motion holding that Cox had not suffered a direct injury or a real or immediate threat of a direct injury as a result of DHSS action. The petitioners appeal from this order.

DHSS cross-appeals from the circuit court order denying its motion. The circuit court reasoned that the legislature did not intend to restrict the right of judicial review to an unsuccessful applicant under ch. 150, subch. II, STATS., because nowhere in the applicable statutes is there language specifically excluding judicial review under § 227.52, STATS. The circuit court held that if the legislature had wanted to limit judicial review to unsuccessful applicants it would have used limiting language; that as written, the judicial review provisions of ch. 150, subch. II, did not exclude any person aggrieved by DHSS approval from seeking judicial review.[1]

---

[1] Under RULE 809.61, STATS., we certified this appeal to the Wisconsin Supreme Court because we believed that the issue presented by the cross-appeal raised public policy issues that are more appropriately considered by the Wisconsin Supreme Court. The supreme court denied our certification.

We commence our de novo interpretation of ch. 150, subch. II, STATS., by resolving whether the statute clearly expresses legislative intent in regard to the right of judicial review of a determination of DHSS on the allocation of resources. *See State v. Joshua M.W.*, 179 Wis. 2d 335, 340, 507 N.W.2d 141, 143 (Ct. App. 1993). In order to give effect to the intent of the legislature, we first will consider whether the language of the statute is plain and unambiguous. If the statute clearly sets forth the legislature's intent, it is our duty to merely apply that intent to the facts and circumstances presented. *See Brown v. Brown*, 177 Wis. 2d 512, 516, 503 N.W.2d 280, 281 (Ct. App. 1993). If the statute is capable of being understood in two or more different senses by reasonably well-informed individuals, it is ambiguous and we will employ extrinsic aids in an effort to ascertain legislative intent. *See id.* at 516-17, 503 N.W.2d at 281-82.

Our interpretation of the statute is driven by the general principle that when the legislature has provided that a specific agency proceeding is subject to a statutory method of review, that method of review is exclusive if it permits an adequate resolution of the issues raised. *See Kaiser v. City of Mauston,* 99 Wis. 2d 345, 350, 299 N.W.2d 259, 263-64 (Ct. App. 1980). Coinciding with this principle is the axiom that "[t]he right to appeal from an administrative agency's determination is statutory and does not exist except where expressly given and cannot be extended to cases not within the statute." *Pasch v. DOR,* 58 Wis. 2d 346, 352, 206 N.W.2d 157, 160 (1973).

There is no question that the statutes controlling the allocation of long-term care resources, ch. 150, subch. II, STATS., clearly and unambiguously incorporate an exclusive administrative procedure that governs DHSS's actions on applications for the licensing of nursing home beds.

After DHSS has received applications for available nursing home beds, any "affected party" can request a public meeting. Section 150.35(2), STATS.[2] An "affected party" is defined as "the applicant, local planning agencies, governmental agencies, other persons providing similar services in the applicant's service area, the public to be served by the proposed project, 3rd party payers and any other person who the department determines to be affected by an application for approval of a project." Section 150.01(2), STATS. At the public meeting, all affected parties who appear can present testimony and DHSS is required to keep minutes or some other record of the testimony and consider the record in determining whether an applicant[3] for

---

[2] Section 150.35(2), STATS., provides:

The department shall hold a public meeting upon the request of an affected party to review applications under s. 150.33 or 150.34, at which all affected parties may present testimony. The department shall keep minutes or other record of testimony presented at the public meeting and shall, based on the testimony, consider the record in determining whether the applicant has met the review criteria under s. 150.39.

[3] Although the term "applicant" is not defined in the statutes, it is defined in the administrative code as "a person who requests an approval or for whom an approval is requested." WISCONSIN ADM. CODE § HSS 122.03(2). The definition of "applicant" in the administrative code can be adopted as the definition of "applicant" in the statute because it is consistent with how that term is used in the statutes. *See Sullivan Bros. v. State*

the available nursing home beds has fulfilled the criteria listed in § 150.39, STATS. Section 150.35(2).

After the public meeting the burden is on the applicant to prove to DHSS, by a preponderance of the evidence, that it has met the applicable statutory criteria for allocation of nursing home beds. Section 150.35(3), STATS.[4] If there are competing applications

*Bank of Union Grove,* 107 Wis. 2d 641, 648, 321 N.W.2d 545, 548-49 (Ct. App. 1982).

Contrary to Cox's argument, neither term is ambiguous. "Affected party" plainly includes both the "applicant," in this case Beverly Enterprises, and "the public to be served by the proposed project," in this case Cox. *See* § 150.01(2), STATS. As used in the statutes, "applicant" is clearly the party who has applied for a license to operate a nursing home; it is the applicant who has the burden of proving that it meets the criteria of § 150.39, STATS., for issuance of the license. It would be absurd to read "applicant" to include any person who requested a public meeting and, using that reading, hold that under § 150.39(1) any person would have to prove that appropriated medical assistance funds are sufficient to reimburse any person for providing nursing home care.

[4] Section 150.35(3), STATS., provides:

Except as provided under sub. (3m), the department shall issue an initial finding to approve or reject the application within 75 days after the date it publishes its notice under s. 150.33(4) or 150.34(3), unless all applicants consent to an extension of this period. The department may extend by 60 days the review cycle of all applications being concurrently reviewed if it finds that completing the reviews within 75 days after the date it publishes its notice under s. 150.33 (4) or 150.34(3) is not practicable due to the volume of applications received. The department shall base its initial finding on a comparative analysis of applications, relying on the criteria specified in s. 150.39. The applicant has the burden of proving, by a preponderance of the evidence, that each criterion specified in s. 150.39 has been met or does not apply to the project. The department may approve fewer additional nursing home beds than allowed by the statewide bed limit if the cost of adding those beds

for available resources, DHSS's initial determination must be based upon a comparative analysis of the applications. If DHSS rejects an application, the unsuccessful applicant has ten days to file a written request for a public hearing to review DHSS's initial determination to reject an application. Section 150.35(4)(a).[5]

The legislature has specifically exempted the public hearing from the "contested case" procedures in ch. 227, STATS., and has required DHSS to develop its own procedures.[6] DHSS's rules for hearing procedures are in WIS. ADM. CODE § HSS 122.08.

---

exceeds the medical assistance allocation for new beds projected in s. 150.31 (1) (e). Unless an adversely affected applicant makes a timely request for a public hearing under sub. (4), the department's initial finding under this subsection is its final action.

[5] Section 150.35(4)(a), STATS., provides:

Any applicant whose project is rejected may request a public hearing to review the department's initial finding under sub. (3) or (3m), if the request is submitted in writing within 10 days after the department's decision. The department shall commence the hearing within 30 days after receiving a timely request, unless all parties consent to an extension of this period.

[6] Section 150.35(4)(b), STATS., establishes the procedural rules that apply exclusively to hearings under ch. 150, subch. II, STATS.:

Sections 227.42 to 227.50 do not apply to hearings under this subsection. The department shall promulgate rules to establish:
  1. Procedures for scheduling hearings under this subsection.
  2. Procedures for conducting hearings under this subsection, including methods of presenting arguments, cross-examination of witnesses and submission of exhibits.
  3. Procedures following the completion of a hearing under this subsection, including the establishment of time limits for issuance of a decision.
  4. Standards relating to ex parte communication in hearings under this subsection.

Noticeably absent from ch. 150, subch. II, STATS., is a provision permitting an affected party, other than an unsuccessful applicant, to file a request for a public hearing challenging an initial determination made by DHSS under § 150.35(3), STATS. This is compatible with the provision providing that § 227.42, STATS., does not apply to DHSS decisions under ch. 150, subch. II; § 227.42, with certain defined exceptions, permits any person to file a written request for a contested case hearing if that person has a substantial interest the legislature intended to protect, the injury to that interest would be different than the injury to the general public, and there is a dispute of material fact. Section 227.42(1).[7]

Not only has the legislature clearly and unambiguously limited the right to challenge the action of DHSS in granting or denying a license to an applicant, it has clearly and unambiguously limited the right to seek judicial review. In § 150.43, STATS., the legislature limits the right of judicial review to an unsuccessful applicant for a license:

---

5. Procedures for reconsideration and rehearing.

[7] Section 227.42(1), STATS., provides:

**Right to hearing. (1)** In addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

320

**Judicial review.** Any applicant adversely affected by a decision of the department under s. 150.35 (4) may petition for judicial review of the decision under s. 227.52. The scope of judicial review shall be as provided in s. 227.57 and the record before the reviewing court shall consist of:

(1) The application and all supporting material received prior to the department's decision under s. 150.35 (3) or (3m).

. . .

(3) The record of the public meeting, if any, under s. 150.35 (2).

(4) The department's analysis of the project and its compliance with the criteria specified in s. 150.39.

(5) Concluding briefs and arguments at a hearing and the findings of fact of the hearing examiner at the hearing under s. 150.35 (4).

(6) The department's findings and conclusions issued under s. 150.35 (3) or (3m).

Cox argues that the explicit language of § 150.43, STATS., granting a right of judicial review to unsuccessful applicants, does not preclude others from seeking judicial review of DHSS's decision granting or denying a nursing home bed license. We reject this argument because it ignores the plain language of the statute and elementary rules of statutory construction.

When all of the provisions regulating the issuance of a license for nursing homes are read together, it is obvious that the intent of the legislature is to limit the right of judicial review to unsuccessful applicants for a license. First, in defining "affected party," the legislature included "the applicant" in the broad classification. Section 150.01(2), STATS. Second, in designing the procedure to be used upon submission of an application, the legislature provided that the broad

class of persons—"affected party"—could request a public meeting on applications for the allocation of resources. Section 150.35(2), STATS. Third, in developing a review process to be used after DHSS's initial determination, the legislature narrows the right to review of that determination in a public hearing to a narrow class of persons—"applicants"—whose applications were rejected. Section 150.35(4). Finally, in devising a process of judicial review, the legislature further narrows the class that can seek judicial review to "applicant[s] adversely affected" by DHSS's decision after the public hearing. Section 150.43, STATS.

The elementary rule of statutory construction that "a statute which expresses one thing is exclusive of another" compels us to the logical inference that the right to petition for judicial review in § 150.43, STATS., is an exclusive right of the "applicant." *See Fred Rueping Leather Co. v. City of Fond du Lac,* 99 Wis. 2d 1, 5, 298 N.W.2d 227, 230 (Ct. App. 1980). It is plain from the definition in § 150.01(2), STATS., that "applicant" is a subclass of "affected party," and when the legislature provides that only an "applicant" can seek judicial review, it is clear that such right is exclusive to that subclass.

An equally elementary rule of statutory construction is that more specific statutory language is to control over general statutory language. *Fred Rueping Leather,* 99 Wis. 2d at 5, 298 N.W.2d at 230. Although § 227.52, STATS., gives the right to petition for judicial review to any person who has a substantial interest adversely affected by an agency's action, § 150.43, STATS., confines the right to petition for judicial review to "[a]ny applicant adversely affected by a decision" of DHSS. The limiting language of § 150.43 controls by blocking affected parties who are not applicants—in

other words, "local planning agencies, governmental agencies, other persons providing similar services in the applicant's service area, the public to be served by the proposed project, 3rd party payers and any other person who the department determines to be affected by an application for approval of a project"—from seeking judicial review.[8] *See* § 150.01(2), STATS.

In summary, we conclude that under ch. 150, subch. II, STATS., the right to judicial review of a DHSS decision allocating nursing home beds and beds in facilities primarily serving the developmentally disabled is limited to an applicant who is adversely affected by a decision of DHSS issued after a public hearing. Other than an applicant, affected parties do not have a right to petition for judicial review of a DHSS decision.

*By the Court.*—Judgment and order affirmed.

---

[8] We have used two basic rules of statutory construction, not to ascertain legislative intent, but for the limited purpose of reinforcing and demonstrating that the statutes are clear and unambiguous on their face. *See State v. Martin,* 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900, 905 (1991).