STATE of Wisconsin, Plaintiff-Respondent,

v.

Juan R. MARTINEZ, Defendant-Appellant.†

Court of Appeals

*No. 96–1899–CR. Submitted on briefs January 16, 1997.—Decided April 24, 1997.*

(Also reported in 563 N.W.2d 922.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

Before Eich, C.J., Dykman, P.J., Deininger, J.

DEININGER, J.   Juan Martinez appeals a judgment convicting him of possession of tetrahydrocannabinols (THC) with intent to deliver more than 2500 grams within 1000 feet of a school, violation of the drug tax stamp law, maintaining a drug house and possession of drug paraphernalia. He also appeals an order denying him postconviction relief. The issues are: (1) whether application of the drug tax stamp law, §§ 139.87 through 139.96, STATS., violates the constitutional right against self-incrimination; (2) whether the trial court properly instructed the jury on the charge of maintaining a drug house; (3) whether possession of marijuana with intent to deliver is a lesser-included offense of the drug tax stamp offense and thus barred by the Double Jeopardy Clause; (4) whether a tobacco pipe may be the basis for a charge of possession of drug paraphernalia; and (5) whether the evidence of the weight of THC possessed with intent to

deliver impermissibly included the weight of mature marijuana stalks.

The Wisconsin Supreme Court has declared the drug tax stamp law unconstitutional. *State v. Hall*, 207 Wis. 2d 54, 557 N.W.2d 778 (1997). Accordingly, we reverse the drug tax stamp conviction. In addition, we conclude that a tobacco pipe is excluded by statute from the definition of drug paraphernalia. We reverse that conviction also. In all other respects, we affirm.

## BACKGROUND

In October 1993, officers from the Rock and Walworth County sheriffs' departments executed a search warrant for the premises occupied by Martinez, his brother, his sister-in-law and other family members. Officers found approximately twenty marijuana plants, approximately thirty-six coat hangers with bundles of drying marijuana plant parts hanging from them, a yellow garbage bag containing "stem material," a cardboard box containing three sandwich bags of processed marijuana and some glass jars containing plastic bags of processed marijuana. The officers also found cash, weapons and various items apparently used for growing and processing marijuana. Martinez was found on the premises during the search. During a pat down of Martinez, one of the officers found a "Dr. Grabow" pipe, which contained residue of THC, in Martinez' pocket.

Martinez was charged with possession with intent to deliver more than 2500 grams of THC within 1000 feet of a school, manufacture of more than 2500 grams of THC within 1000 feet of a school, a drug tax stamp violation, maintaining a drug house and possession of drug paraphernalia. The jury found Martinez guilty on all charges. A judgment was entered convicting him on

all five counts, and the trial court sentenced him to several concurrent terms for a maximum of five years. Martinez then filed a postconviction motion challenging each of the convictions. The trial court granted a new trial on the manufacturing THC conviction but denied Martinez' motion as to the remaining four convictions.

## ANALYSIS

### Drug Tax Stamp Violation

Martinez argues that his conviction under the drug tax stamp law[1] violates his state and federal constitutional rights against self-incrimination. Section 139.89, STATS., states: "No dealer may possess any schedule I controlled substance or schedule II controlled substance unless the tax under s. 139.88 has been paid on it, as evidenced by a stamp or other official evidence issued by the department." Specifically, Martinez argues that § 139.89 requires him to divulge information subjecting him to the hazard of self-incrimination.

In a recent opinion, *State v. Hall*, 207 Wis. 2d 54, 65, 557 N.W.2d 778, 782 (1997), the Wisconsin Supreme Court declared the provisions of the drug tax stamp law unconstitutional on the basis that compliance with the statute violates the right against self-incrimination protected by both the United States and Wisconsin constitutions.[2] Accordingly, we reverse the judgment of conviction for violation of § 139.89, STATS. *See State v. Hicks*, 207 Wis. 2d 51, 52–53, 557 N.W.2d 412, 412 (1997).

---

[1] *See* §§ 139.87 through 139.96, STATS.

[2] U.S. CONST. amend. V; WIS. CONST. art. I, § 8.

Martinez also argues that because the possession with intent to deliver offense is a lesser-included offense of the drug tax stamp offense, his double jeopardy rights have been violated. Because we have reversed the drug tax stamp conviction, we need not consider this argument. *See State v. Dowe*, 207 Wis. 2d 130, 131, 557 N.W.2d 812, 813 (1997).

### Maintaining a Drug House

Martinez was convicted of keeping or maintaining a drug house, contrary to § 161.42, STATS., 1993–1994.[3] He contends that he should be given a new trial on this conviction because the trial court erroneously failed to instruct the jury that proof of "dominion and control" over the premises is required for a conviction under § 161.42. The State argues that Martinez has waived this objection by failing to object to the instruction in the trial court. We agree.

Martinez concedes that he did not object to the instruction at conference. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict. Section 805.13(3), STATS.; *State v. Schumacher*, 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988) (court of appeals lacks power to directly review unobjected-to jury instructions).

Martinez, however, asks us to use our discretionary reversal authority under § 752.35, STATS., to grant him a new trial in the interest of justice. Under § 752.35, we have the authority to reverse and remand

[3] The judgments of conviction for maintaining a drug house, possession with intent to deliver, and possession of drug paraphernalia were under ch. 161, STATS., 1993–1994. Chapter 161 has since been amended and renumbered under ch. 961, STATS. *See* 1995 Wis. Act 448. All references in this opinion are to ch. 161, STATS., 1993–1994.

for a new trial whenever it is probable that justice has miscarried. *Vollmer v. Luety*, 156 Wis. 2d 1, 16, 456 N.W.2d 797, 804 (1990). The power of discretionary reversal and review should be exercised only in exceptional cases. *Id.* at 11, 456 N.W.2d at 802. In order to reverse for a miscarriage of justice under § 752.35 , we must conclude that there is a substantial probability of a different result on retrial. *Id.* at 16, 456 N.W.2d at 804. We are unable to so conclude on this record.

The trial court gave the standard pattern jury instruction for keeping or maintaining a place used for the manufacture of controlled substances. *See* WIS J I—CRIMINAL 6037B. It describes the first element of the offense as requiring the jury to find that "the defendant kept or maintained a structure or place." Martinez contends the instruction is insufficient because it does not instruct the jury that "keeping" involves "an exercise of management or control over the place."[4] On the motion

_____

[4] Martinez finds support for his argument that the "management or control" language is required from WIS J I—CRIMINAL 6037A, the pattern instruction for the offense of maintaining a place resorted to by persons using controlled substances. The instruction defines the first element in language identical to that used in WIS J I—CRIMINAL 6037B, but it goes on to state that " [t]o keep or maintain a place is to exercise management or control over the place. This element does not require that the defendant owned (name of place), but it does require that the defendant maintained management or control of the place in question." In footnote 4 to WIS J I—CRIMINAL 6037A, the instructions committee comments that it concluded: "[keep] implies the exercise of management or control over the operation of the place." No similar comment is made in WIS J I—CRIMINAL 6037B, nor does the committee comment upon why it deemed the "management or control" language applicable in one instruction but not the other.

after verdict challenging the maintaining a drug house conviction, the trial court stated that, based on the evidence, a jury could "draw the conclusion from the evidence that [Martinez] was sufficiently in dominion and control of the house and the use the house was put to in order to be convicted under the statute." We have reviewed the record and are not convinced there is a substantial probability of a different result upon retrial even if the instruction were to include the "management or control" language Martinez requests.[5]

### Whether a Tobacco Pipe is Drug Paraphernalia

Next, Martinez contends that his conviction for possession of drug paraphernalia should be reversed because the pipe he possessed is excluded from the statutory definition of drug paraphernalia. We agree, and accordingly reverse the judgment of conviction.

Construction of a statute and its application to a particular set of facts are questions of law which we decide de novo, owing no deference to the trial court. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). The primary purpose of statutory construction is to determine and give effect to the intent of the legislature. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). We determine the legislature's intent by "examining the

---

[5] Martinez also contends that the trial court's failure to instruct the jury using the "management or control" language was plain error. *See Vollmer v. Luety*, 156 Wis. 2d 1, 21 n.5, 456 N.W.2d 797, 806 (1990). The plain error doctrine does not apply to review of unobjected-to jury instructions. *See State v. Schumacher*, 144 Wis. 2d 388, 402, 424 N.W.2d 672, 677 (1988); *Interest of C.E.W.*, 124 Wis. 2d 47, 55, 368 N.W.2d 47, 51–52 (1985). We therefore do not consider the argument.

language of the statute and the scope, history, context, subject matter and purpose of the statute." *State ex rel. Sielen v. Milwaukee Circuit Court*, 176 Wis. 2d 101, 106, 499 N.W.2d 657, 659 (1993). Where the language chosen by the legislature is clear and unambiguous, we arrive at the intent of the legislature by "giving the language its plain, ordinary and accepted meaning." *State v. Mendoza*, 96 Wis. 2d 106, 114, 291 N.W.2d 478, 483 (1980). If a statute clearly sets forth the legislative intent, we simply apply the statute to the facts presented. *See Cox v. DHSS*, 184 Wis. 2d 309, 316, 517 N.W.2d 526, 528 (Ct. App. 1994).

Officers found a "Dr. Grabow" pipe containing traces of THC on Martinez. Martinez was found guilty of violating § 161.573, STATS., which states: "No person may use, or possess with the primary intent to use, drug paraphernalia to . . . ingest, inhale or otherwise introduce into the human body a controlled substance . . . ." Section 161.571(1)(a), STATS., defines drug paraphernalia as follows:

> (1)(a)   "Drug paraphernalia" means all equipment, products and materials of any kind that are used, designed for use or primarily intended for use in . . . ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this chapter. "Drug paraphernalia" includes, but is not limited to, any of the following:
>
>    . . . .
>
> 11.   Objects used, designed for use or primarily intended for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body . . . .

Section 161.571(1)(b), however, excludes certain objects from the definition of drug paraphernalia:

(b)   "Drug paraphernalia" excludes:
    . . . .

2.   Any items, including pipes, papers and accesso-
ries, that are *designed for use* or primarily intended
for use *with tobacco products*.

(Emphasis added.) The test to determine whether an
item is "designed for use" with tobacco products is an
objective one:

(2)   In determining under this subchapter
whether an item is designed for a particular use, a
court or other authority shall consider the objective
physical characteristics and design features of the
item.

Section 161.572(2), STATS.

The language of §§ 161.571(1)(b)2 and 161.572(2),
STATS., is plain. A "Dr. Grabow" pipe is excluded from
the definition of drug paraphernalia if it is either
designed for use with tobacco products, considering its
objective characteristics, or primarily intended for use
with tobacco products. In other words, the legislature
has decreed that where an item is designed for use with
tobacco products, it is excluded from the definition of
drug paraphernalia regardless of the actual use to
which the item may be put.[6] The State concedes that

_____

[6] The information charged Martinez with possessing "drug
paraphernalia to plant, propagate, cultivate, grow, harvest,
manufacture, compound, convert, produce, process, prepare,
test, analyze, pack, repack, store, contain, conceal, inject,
ingest, inhale or otherwise introduce into the human body a
controlled substance." The jury was instructed, however, only
on "drug paraphernalia to . . . ingest, inhale or otherwise intro-
duce into the human body a controlled substance." The
prosecutor's argument to the jury focused solely on the pipe: "A
pot pipe is drug paraphernalia. That's all we have to show you

"Dr. Grabow" pipes are designed and marketed for use with tobacco products, and the trial court so found: "the court . . . would find that a Dr. Graybow [sic] pipe, the design, and the normal use is not for ingesting drugs but is for smoking tobacco."

The State contends that construing the statute to exclude a tobacco pipe that contains residue of a controlled substance produces an unreasonable result and is contrary to the intent of the legislature. *See State v. Mattes*, 175 Wis. 2d 572, 578, 499 N.W.2d 711, 713 (Ct. App. 1993) (statutes should be construed to avoid absurd or unreasonable results). The stated purpose of ch. 161, STATS., is to deter drug trafficking and prevent a serious threat to the public healt and safety.[7] However, we must assume the legislature chose the

for possession of drug paraphernalia." The exclusion under consideration removes only "pipes, papers and accessories" used with tobacco products from the drug paraphernalia definition based on their design or primary intended use. Section 161.571 (1)(b), STATS. Items actually used to plant, propagate, package, store, etc., controlled substances have no similar design-based exclusion. Section 161.571(1)(a), STATS. The State does not argue that the conviction for drug paraphernalia is sustainable based on evidence that Martinez possessed manufacturing- and storage-related drug paraphernalia.

[7] Section 161.001 , STATS., states:

**Declaration of intent. . . .**

(1)   Persons who illicitly traffic commercially in controlled substances constitute a substantial menace to the public health and safety. The possibility of lengthy terms of imprisonment must exist as a deterrent to trafficking by such persons. Upon conviction for trafficking, such persons should be sentenced in a manner which will deter further trafficking by them, protect the public from their pernicious activities, and restore them to legitimate and socially useful endeavors.

language of § 161.571(1)(b)2, STATS., with a purpose. We may not second-guess the legislature by rewriting the plain language of a statute. This is true even where, as the State argues, the plain language leads to a result seemingly at odds with the general purpose of the statute. *See City of Kenosha v. Phillips*, 142 Wis. 2d 549, 560–61, 419 N.W.2d 236, 240 (1988). Moreover, we do not believe the legislature intended to outlaw "Dr. Grabow" pipes. We conclude the judgment of conviction for possession of drug paraphernalia must be reversed.

### Determining the Weight of THC

Martinez next contends that the verdict answer with respect to the weight of THC possessed with intent to deliver should be set aside. He argues the evidence presented by the State to show the weight of THC in his possession included the weight of dirt and mature marijuana stalks, contrary to statute. We conclude that a jury could properly find, based on the evidence presented by the State, that Martinez possessed, with intent to deliver, more than 2500 grams of THC.

The statutory penalties for possession of THC with intent to deliver depend on the weight of THC possessed.[8] Section 161.41(1m)(h), STATS. Section

---

[8] Under § 161.41(1m)(h)3, STATS., an individual who possesses more than 2500 grams of THC with intent to deliver shall be fined not less than $1000 and not more than $100,000 and shall be imprisoned not less than one year nor more than ten years. The next lower weight category, 501 grams to 2500 grams, carries a fine of not less than $1000 nor more than $50,000 and a sentence of not less than three months nor more than five years. Section 161.41(1m)(h)2. Martinez was fined $1000 and sentenced to five years in prison on the possession with intent to deliver conviction.

161.41(1r) sets out the method for calculating the weight of THC for the purpose of determining the penalties for possession with intent to deliver:

> (1r) In determining amounts under subs. (1) and (1m) . . . an amount includes the weight of . . . tetrahydrocannabinols together with any compound, mixture, diluent or other substance mixed or combined with the controlled substance. In addition, in determining amounts under sub[ ] . . . (1m)(h), the amount of tetrahydrocannabinols means anything covered under § 161.14(4)(t) *and includes the weight of any marijuana.*[9]

(Emphasis added.) Section 161.01(14), STATS., defines marijuana:

> (14) "Marijuana" means all parts of the plants of the genus Cannabis, whether growing or not . . . and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols. *It does not include the mature stalks of the plant . . . .*

(Emphasis added.)

---

[9] Section 161.14(4)(t), STATS., states:

(4) HALLUCINOGENIC SUBSTANCES. Unless specifically excepted under federal regulations or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances or their salts, isomers or salts of isomers, if salts, isomers or salts of isomers exist within the specific chemical designation, in any form including a substance, salt, isomer or salt of an isomer contained in a plant, obtained from a plant or chemically synthesized:

. . . .

(t) Tetrahydrocannabinols, commonly known as "THC", in any form including tetrahydrocannabinols contained in marijuana, obtained from marijuana or chemically synthesized.

409

We will uphold a jury verdict on appeal unless we conclude that, under all the evidence presented, the jury could not have found guilt beyond a reasonable doubt. *State v. Alles*, 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982). Where more than one reasonable inference may be drawn from the evidence adduced at trial, this court must accept the inference drawn by the jury. *See id.* If any possibility exists that "the jury *could* have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we will not overturn a verdict even if we believe that a jury *should* not have found guilt based on the evidence before it." *Id.*

Two of the exhibits introduced by the State contained processed marijuana weighing a total of 1844.1 grams.[10] Martinez apparently concedes that the weight of the processed marijuana could properly be considered by the jury in determining the weight of THC under § 161.41(1r), STATS. Thus, if the record contains any credible evidence showing that Martinez possessed more than 655.9 grams of THC in addition to the conceded 1844.1 grams, we must affirm the jury verdict. However, Martinez contends that (1) none of the remaining evidence is free of either dirt or mature plant stalks excluded by § 161.01(14), STATS.; and (2) the State introduced no evidence indicating the weight of THC or marijuana minus the dirt and stalks.

First, we note that Martinez was charged with both manufacture of THC and with possession of THC with intent to deliver. The State introduced evidence to support both charges, including a number of exhibits containing marijuana plants or plant material in vari-

---

[10] The parties use the term processed marijuana to refer to dried marijuana leaves that are suitable for consumption.

ous states: whole marijuana plants, parts of marijuana plants hanging from coat hangers, parts of marijuana plants in a large yellow bag, and processed marijuana in glass jars and sandwich bags.[11]

During its closing argument to the jury, the State argued that it had proven possession with intent to deliver over 2500 grams of THC based on the processed marijuana in the glass jars and sandwich bags, and the contents of Exhibit 38, a yellow garbage bag containing green vegetable material. Statements made during closing argument are not, of course, evidence. *See State v. Hoffman*, 106 Wis. 2d 185, 220, 316 N.W.2d 143, 162 (Ct. App. 1982). However, we will use Exhibit 38 as a starting point in our search for evidence or reasonable inferences drawn from the evidence to support guilt beyond a reasonable doubt.

The record contains a photograph of Exhibit 38.[12] A forensic scientist from the state crime lab testified that the plant material contained in the exhibit consisted of "stem material" or "stems of marijuana rubber banded together" and weighed 1428.7 grams. It is apparent from the photograph that the yellow garbage bag does not contain whole marijuana plants, which could include "mature stalks." Rather, the bag contains what might be described as marijuana cuttings, i.e., marijuana leaves or buds attached to pieces of stem cut from a plant.

Martinez argues in effect that the pieces of stems in the yellow garbage bag constitute "mature stalks" excluded from the definition of marijuana under § 161.01(14), STATS., and hence, from the calculation of

---

[11] The 1844.1 grams of marijuana conceded by Martinez is the processed marijuana in the glass jars and sandwich bags.

[12] The photograph itself is marked Exhibit 37. The actual bag and its contents are Exhibit 38.

the weight of THC under § 161.41(1r), Stats. If Martinez is correct, then the contents of Exhibit 38 could not be relied upon by the State to show sufficient evidence from which a reasonable jury could conclude that Martinez possessed 2500 or more grams of THC. Whether the term "mature stalks" includes "stems" or "stem material" presents a question of statutory construction. Statutory construction is a question of law which we review de novo. *State v. Mattes*, 175 Wis. 2d 572, 578, 499 N.W.2d 711, 713 (Ct. App. 1993).

Officer Robert Bricco of the Rock County Metro Narcotics Unit testified that "larger" marijuana plants have a "thick" main axis of roughly three inches in diameter and that a larger marijuana plant must be "cut down" at "the base" of the plant in order to harvest it. We recognize that the words "stalk" and "stem" may be used interchangeably to refer to the main axis of a plant.[13] However, after reviewing the testimony and the photographs of Exhibit 38, we conclude that in this case the term "stem" was not used to refer to the mature stalk or main axis of the marijuana plants, but to the leaves or buds of marijuana and the thin branches immediately attached to them. Section 161.01(14), Stats., defines marijuana as "all parts of" the marijuana plant and specifically excepts, for our purposes, only the "mature stalks."[14] We conclude that the stems or branches supporting the marijuana leaves

---

[13] *See* Webster's Third New International Dictionary 2221, 2235 (1993).

[14] The Wisconsin Legislature has renumbered § 161.01(14), Stats., and amended it to include the mature stalks in the definition of marijuana if the stalks are "mixed with other parts of the plant." *See* § 961.01(14), Stats.

or buds in Exhibit 38 are not excluded as "mature stalks."[15]

In addition, Martinez contends that the evidence to show he possessed more than 2500 grams of THC included the weight of dirt attached to the whole marijuana plants taken from the ground and not cleaned off before weighing. There is no evidence in the record to show Exhibit 38 contained any of the whole plants to which Martinez refers, or in fact, that Exhibit 38 contained any dirt at all.

The weight of marijuana cuttings contained in Exhibit 38, 1428.7 grams, is more than the 655.9 grams needed, together with the weight of the processed marijuana to show Martinez possessed more than 2500 grams of THC as calculated according to § 161.41(1r), STATS. In considering the testimony and exhibits before them, the jury could reasonably find that Martinez possessed more than 2500 grams of THC with intent to deliver.[16]

---

[15] Our conclusion is consistent with authority from other jurisdictions with statutes analogous to § 161.01(14), STATS. *See Day v. State*, 539 So. 2d 410, 413 (Alab. Crim. App. 1988); *State v. Radebaugh*, 450 N.E.2d 291, 294 (Ohio Ct. App. 1982); *cf. Hill v. Commonwealth*, 438 S.E.2d 296, 298 (Va. Ct. App. 1993). Under federal law, federal courts have held that even mature marijuana stalks, although excluded from the definition of marijuana, can still constitute part of a "mixture or substance" containing a detectable amount of marijuana for the calculation of the weight of a controlled substance. *See United States v. Berry*, 876 F.2d 55, 56 (8th Cir. 1989); 21 U.S.C. § 802(16).

[16] There was no testimony indicating the weight of the yellow garbage bag and rubber bands contained in Exhibit 38. However, the jury could "apply common knowledge and individual observations and experience" to infer that the weight of the garbage bag itself and the rubber bands contained in Exhibit 38

413

Based on the foregoing, we reverse the judgments of conviction for possession of drug paraphernalia and violation of the drug tax stamp law and the order denying relief as to those convictions. We affirm the judgments of conviction and the order denying relief for maintaining a drug house and possession of THC with intent to deliver.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded.

---

were negligible. *See State ex rel. Cholka v. Johnson*, 96 Wis. 2d 704, 713, 292 N.W.2d 835, 840 (1980); WIS J I—CRIMINAL 195.